# Staunton

PENCIE CRAWFORD CLARK, ADM., ETC. v. LELA OLD HODGES.

September 11, 1946.

Record No. 3085.

Present, All the Justices.

The opinion states the case.

*Louis Lee Guy*, for the plaintiff in error.

*W. R. Ashburn*, for the defendant in error.

Hudgins, J., delivered the opinion of the court.

This writ of error brings under review the proceedings in a trial that resulted in a judgment on a verdict returned for the defendant, in an action for the wrongful death of Carl Lee Crawford, an infant.

There was no substantial conflict in the testimony. The accident occurred on Campostella Road in Norfolk. This street, one of the principal thoroughfares in the city, extends approximately north and south and is 34 feet wide from curb to curb. Springfield avenue extends east and west and enters Campostella Road from the east but does not extend across it. Princeton avenue begins on the east side of Campostella Road, extends east parallel to Springfield avenue and is approximately 265 feet to the south of it. On the west side of Campostella Road, just opposite the dead end of Princeton avenue, there are three depressions in the curb, outlets for privately owned garages.

Shortly after 5:00 P. M. on March 28, 1945, Mrs. Lela Old Hodges, the defendant, driving west on Springfield avenue, stopped at its intersection with Campostella Road for traffic signals, made a left turn and started south on Campostella Road. As she approached the entrance to Princeton avenue, cars headed south were parked on her right—that is, on the west side of Campostella Road. She saw a man, later ascertained to be Howard B. Moore, apparently changing a tire on the left rear wheel of a car parked on the west side of Campostella Road opposite, or to the south of, the entrance to Princeton avenue. As Mrs. Hodges approached, driving between 15 and 20 miles per hour, she turned her car to her left in order that she might have safe clearance space between her moving car and the man or men working on the deflated tire. As Mrs. Hodges' front bumper came in line with the front bumper of Moore's parked car, she saw Carl Lee Crawford, a boy between 4 and 5 years of age, dart out in the street from the west side or Campostella

Road in front of Moore's car. She instantly applied her brakes and swerved her car still further to the left in a vain attempt to avoid a collision with the child. The child ran into the side of the moving car, colliding with the right front fender. The force of the impact knocked him down, he rolled under the car and the right rear wheel ran over him, inflicting injuries from which he died.

Mrs. Hodges stopped her car within a car length of the body. Just before stopping, she turned her car slightly back to the right so that, when it came to rest, the front was nearer the west curb than the rear. The body of the child was lying slightly to the left—that is, slightly east of the center of Campostella Road and 12 to 15 feet south of the intersecting line of Princeton avenue, if it extended across Campostella Road.

Mrs. Hodges screamed for help as she ran toward the child, but, before she could reach him, he had been picked up by Mr. Moore, who put him in Mrs. Hodges' car. Mr. Russ and Mrs. Hodges took him to the hospital.

Twelve of the twenty-five separate assignments of error are based on the rulings of the trial court in granting and refusing instructions. To discuss each of these assignments of error would require a lengthy dissertation on the subject of negligence of motorists on the highway, and serve no useful purpose. In view of the ultimate decision on the merits, we confine our discussion on this phase of the case to the objections made to instruction No. 3, granted on the request of defendant.

This instruction reads: "The Court instructs the jury that if after hearing all the testimony they entertain any doubt as to whether the defendant was guilty of negligence which proximately caused the collision, then it is their duty to give the defendant the benefit of that doubt, for the plaintiff is not entitled to recover merely because the jury believe that the defendant may have been guilty of negligence which caused the collision, or even if they believe that it is just as probable that she was negligent as that she was not, that the law requires the jury to find their verdict for the

defendant unless they are convinced by a preponderance of the evidence that the defendant was guilty of negligence which proximately caused the accident, and on this question the defendant is entitled to the independent judgment of each member of the jury."

 The first part of the instruction states the rule on the burden of proof applicable to a criminal case. The latter part of the instruction states the rule on the burden of proof applicable to a civil case. Combining the two rules in one instruction is contradictory, misleading and confusing.

A plaintiff in a tort action is not required to prove his case beyond a reasonable doubt. All that he is required to do in order to recover is to make it appear by a preponderance of the evidence that the defendant was negligent and that the injury or loss was the proximate result of such negligence. *Wood* v. *Southern Ry. Co.*, 104 Va. 650, 52 S. E. 371; *Milton* v. *Norfolk, etc., Ry. Co.*, 108 Va. 752, 62 S. E. 960; *Shiflett* v. *Virginia Ry., etc., Co.*, 136 Va. 72, 116 S. E. 500.

██ While the giving of this instruction constitutes reversible error, this court is required, under Code, sec. 6365, to consider the entire record. If, upon such consideration, it is determined that the facts are sufficient to enable the court to attain the ends of justice, a final judgment must be rendered here. There is no reason to believe that upon another trial any new or different evidence, which would affect the result, would be introduced. Our examination of this record convinces us that the evidence is not sufficient to sustain any verdict for plaintiff.

Plaintiff contends that the jury had a right to infer from the evidence that defendant was guilty of negligence on one or more of the three following grounds: (A) She was operating the car at an unreasonable rate of speed under conditions then existing; (B) she was driving on the left side of the center of the street; and (C) she was not keeping a proper lookout for pedestrians crossing at the intersection.

A. Campostella Road, as stated, is 34 feet wide and paved from curb to curb. Cars, facing south, were parked

close to the curbing on defendant's right—that is, on the west side of the street. The parked cars occupied approximately 6 of the 17 feet of the southbound traffic lane. This left 11 feet of the street for the use of southbound traffic. Defendant was operating her car within this space at a moderate rate of speed—that is, from 15 to 20 miles an hour. She was leaving the business section and entering the residential section of the city, hence the legal rate of speed was 25 miles an hour at the point of collision. No other cars seem to have been approaching from either direction, nor were any pedestrians attempting to cross the street in sight of defendant. These facts are not seriously controverted. They do not convict defendant of driving her car at an illegal rate of speed.

B. Defendant testified that she operated her car to the right of the center line of Campostella Road from the time she entered it until she saw the child dart out from in front of the Moore car. All witnesses who testified on the point said that, as defendant approached the men who were changing tires on the Moore car, she turned her car further to the left, thereby leaving a space of approximately 3½ feet between the parked car and the right side of her car. While these statements as to distances are merely estimates, there is nothing in the record which tends to contradict their accuracy. They establish the fact that Mrs. Hodges' car veered to the left as it passed Moore's car but that it stayed in the southbound traffic lane. The witnesses, both for plaintiff and defendant, said that, when the child ran out into the street in front of the Moore car, Mrs. Hodges swerved her car still further to the left in an attempt to avoid striking the child. This swerving carried her across the center line of the street and into the lane of northbound traffic, but no traffic was approaching from the south. No one was endangered by the fact that defendant's car crossed the center line in the emergency. Under these circumstances, the turning of the car across the center line was a proper and reasonable maneuver. These uncontradicted facts do not

convict defendant of illegally driving her car on the left or east of the center of the street.

C. Mrs. Hodges' uncontradicted testimony is that, as she approached the entrance to Princeton avenue, she was on the alert and keeping a careful lookout for traffic and for pedestrians at the intersection. No pedestrian was in sight. The parked cars prevented a motorist traveling south from seeing the child on the sidewalk, as he was only 4 feet 4 inches tall. Defendant said that, while she was keeping a careful lookout, she did not see the child until he ran out from in front of the Moore car. She immediately swerved her car to the left and applied her brakes. Her statements on this issue are not contradicted and are fully supported by the testimony of Mr. and Mrs. Moore. Mr. Moore stated: "Well, as I say, I was standing on the left side of my car with the door partially open, and it was without any reason I was looking south on Campostella Road when this car came by at a moderate rate of speed, and at the same time I seen this child run off the sidewalk out into the street. I didn't know right at the moment what to do because nothing had happened right at the moment. I saw the car when it was right beside my car and it swerved to the left, and just about the time it hit the child, maybe a second before, I heard the brakes and just a little thud but no skidding or anything, but just heard the pressure of brakes and, of course, the child ran into the right front fender of the car and was knocked down and the right rear wheel passed over its body. The car then stopped approximately one car length from the spot where the child was laying."

He also stated that Mrs. Hodges could not have seen the child in time to avoid the accident, and that, if he had been driving the car, he did not know anything he "could have done much more than she did."

Mrs. Moore was sitting on the right side of the front seat of her husband's parked car. The pertinent part of her testimony is: "Just about the time I heard the car coming, and I was sitting where I could see kind of catty-cornered,

and as I saw the car coming that Mrs. Hodges was driving, just about the time she got alongside of our car the little boy decided to run, and I knew before she ever hit him that there was going to be an accident and I screamed."

■ Other testimony in the case reveals that Carl Lee Crawford had left his tricycle unattended on the southeast corner of Princeton. avenue and Campostella Road. Mrs. Hodges testified that she did not remember seeing the tricycle. Plaintiff earnestly argues that this tricycle was in plain view, that it was a warning to Mrs. Hodges and other motorists that children were in the vicinity, and that failure to reduce the speed of the car under the circumstances was negligence. We do not think that a tricycle or other toy lying on the sidewalk is notice to a motorist that a child might dart out into the street from the opposite sidewalk.

■ We have repeatedly held that, when a driver of an automobile knows, or, in the exercise of ordinary care, should have known, that children are present or liable to be present in a highway, then failure to exercise that degree of care that a careful man would exercise under the same situation is negligence.

The plaintiff did not bring her case within the above principle. The substance of the proof is that, while defendant was operating her car at a reasonable rate of speed on the proper side of the street and keeping a proper lookout, an infant, 4 years of age, hidden from defendant's view, ran out from the sidewalk from behind an obstruction into the side of the moving car. The result was tragic and deplorable, but it was not due to any violation of duty the law imposed upon defendant.

■ Plaintiff, in support of her contention that the evidence presents a jury question, cites the fact that the trial judge refused to strike the plaintiff's evidence when she rested her case and again at the close of the introduction of all the evidence, and, over defendant's objection, instructed the jury on the plaintiff's theory of the case. This argument is unsound. The trial judge, in the exercise of his discretion, deemed it wise to submit the question to the jury. If the

jury had returned a verdict for plaintiff and defendant had moved to set it aside, the trial judge, before passing upon that motion, would have had an opportunity to review the evidence more carefully. The procedure adopted by the trial court was eminently fair to both litigants, but his ruling is not conclusive as to his view of the evidence. Even if it were, the responsibility is on this court to exercise its independent judgment on the issues involved.

Plaintiff, under the provisions of Code of 1919, sec. 6236, filed fourteen interrogatories and requested the court to demand that the defendant answer them. This was an attempt by plaintiff, without disclosing her own evidence, to obtain before trial the full testimony of defendant on the vital questions in the case. The refusal of the court to require the defendant to answer all the questions is assigned as error. The accident occurred in broad daylight in the presence of at least five disinterested witnesses, four of whom were called to testify. Both plaintiff and defendant had equal opportunity to interview these witnesses. This is not a case for a bill of discovery and the court committed no error in its refusal to grant plaintiff's request.

The judgment of the trial court is affirmed.

*Affirmed.*