## Staunton

FRED RONALD BOYD v. ROY BROWN, AN INFANT WHO SUED BY
BESSIE BELL BROWN, HIS MOTHER AND NEXT FRIEND.

September 5, 1951.

Record No. 3808.

Present, Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Meade & Talbott,* for the plaintiff in error.

*Garrett & Wheatley,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This writ of error brings under review the proceedings in a trial that resulted in a judgment on a verdict returned for the plaintiff, an infant, in his action against Fred Ronald Boyd for personal injuries sustained when he was struck by a truck driven by the defendant.

The principles of law involved are not in dispute. There are no assignments of error to the instructions given the jury. The evidence was without substantial conflict. The sole question for our consideration is whether, viewed in the light most favorable to the plaintiff, the evidence is sufficient to support the verdict of the jury.

The accident occurred about 2 :15 o'clock p. m., September 16, 1949, at a point on Worsham street between intersections, in the city of Danville, Virginia.

The following rough sketch or diagram will serve to show the locale of the accident and make clearer our references thereto.

*Boyd v. Brown, an infant, by n. Record No. 3808.*

Worsham street, paved with concrete, is 40 feet wide and runs north and south. It has sidewalks on each side, and at the place of the accident passes through a residential section. It is used as a by-pass for traffic through the city, and the speed limit thereon is 25 miles per hour. It is intersected by Meade street on the west, 310 feet north of the point of the accident, and by Plum street on the east, approximately 55 feet south of the point of the accident. Immediately south of its intersection with Meade street, there is a cross-walk indicated by white painted lines across Worsham street. Approximately 250 feet north of the cross-walk, the word "School," in letters 18 inches wide and 6¼ feet high, in an over-all area of 6¼ by 9 feet, is painted on the pavement of Worsham street for traffic proceeding south. 375 feet south of the same cross-walk, "School" is similarly painted south of the intersection with Plum street for traffic proceeding north along Worsham street. There were no cross-walk lines at the intersection with Plum street. No speed signs were posted in the area, and it is not a school zone.

Roy Brown, an infant six years of age and forty-nine inches in height, lives in a section of Danville east of Worsham street. When he was struck he was on his way home from school. The school which he attended is to the west of Worsham street, a quarter of a mile from the scene of the accident. Apparently he had come with two other small boys along Meade street to Worsham street. When they reached the westerly side of Worsham street they did not pass over the cross-walk at the intersection, but proceeded south along the westerly sidewalk of Worsham street towards Grant's store, some 200 or more feet south of the intersection with Meade street.

The defendant, called as an adverse witness, was the first person to testify. He said he was employed by the Danville Pepsi-Cola Company, and had had 14 years experience in truck driving at the time of the accident. He was driving a three-quarter panel delivery truck, and was engaged in making special deliveries. His truck was lightly loaded with three cases of Pepsi-Cola syrup, a tool box, a fountain, and a Pepsi-Cola dispenser. He knew school sessions had started, as he had a daughter attending school, and that small children got out of school early. He said, although he wasn't looking at his speedometer, that he was driving 15 miles an hour, and not over 20 at the most prior to the accident, and was on the lookout for chil-

dren; that he saw two boys standing on the sidewalk between Grant's store and Plum street, facing each other and talking; that they gave no sign or indication that they intended to cross the street; that as he was already driving his truck carefully he did not reduce his speed; that there were two cars parked at the curb on his right side, the second or foremost being a Buick convertible; that as he was passing the first car, the two boys on the sidewalk were opposite the rear of the Buick; that as he was passing the Buick, the plaintiff, a third boy, ran into the street from in front of the Buick, approximately 6 feet from the front of his truck; that he "believed" Roy was on the sidewalk near the front of the Buick where he could not see him at the time his truck passed the other two boys; that he was operating his truck on the right-hand side of the street, and that immediately upon seeing the plaintiff he applied his brakes and "cut" to the left; that his truck stopped within its length, leaving black tire marks for that distance on the pavement; that the center of the grille across the front of his truck struck the boy and "rolled" him about 6 feet in front of the truck; and that he got out of his truck and went to the aid of the child, lying unconscious in the street. One of Roy's shoes was lying in the street near the right front wheel of the truck at the point where Boyd thought the child was struck.

Boyd further testified that the sudden application of his brakes caused a syrup can and a Pepsi-Cola machine to knock open a door on the right-hand side of the truck and fall into the street. He stopped the truck near the center of the street, its front right wheel being farther away from the right curb than the rear right wheel.

H. B. Hubbard, who was driving a station wagon south along Worsham street, more than 200 feet ahead of the truck of the defendant, said that just before getting to Grant's store, he saw two or three children on the sidewalk "walking and jumping around and clowning." Hearing the noise made by the application of the brakes of defendant's truck and by the cans falling from the truck, he looked into his rear view mirror, and saw a child "bounding along the street." He immediately stopped his car about 270 feet south of the point of the accident, and went back to that point. He found the child lying 8 or 10 feet ahead of the truck, and one of his shoes near the front side of the truck. The front end of the truck, which had been turned to the

left, was also about 12 feet from the left curb. He spoke to Boyd and the latter said, "The child ran out and ran into the truck." He called the police, and waited at the scene until the officers arrived.

Upon arrival of two police officers, Boyd made the same explanation of the accident to them. The two officers then made measurements at the scene of the accident, and testified that the front of the right wheel of the truck, as it was brought to a stop, was 17 feet from the right curb of Worsham street, and its rear right wheel was 13 feet from that curb; that the width of the truck was about 6 feet; that its rear left wheel was approximately 1 foot from the center line of the street, and its front left wheel was over the center line and 17 feet from the left curb line; that the rear wheels of the truck were about opposite the front wheels of the Buick; that the truck, with four-wheel brakes, had left tire marks on the pavement for a distance of 20 feet; and that it appeared that the truck had swerved to the left before stopping, and had come to rest straddling the center line of the street. Upon arrival of the officers, there were two cars parked at the westerly curb of Worsham street, approximately 4 feet apart, the front car being a Buick convertible, approximately 18 feet long.

Roy Brown testified but neither of his companions was called as a witness. The following extract from his evidence is the child's explanation of the accident:

"Q. Did you want to cross Worsham street?

"A. I wanted to cross up there but they told me to come on down there to the other place.

"Q. What other place?

"A. The wide place.

"Q. Who is Dick that told you that?

"A. I don't know anything about Dick.

"Q. Who told you that?

"A. Joy.

"Q. You say they told you. Who was with you?

"A. Joy and I don't know what the other boy's name is.

"Q. Were all three of you together walking down there?

"A. Yes, sir.

"Q. And who told you to cross somewhere else from where you wanted to cross?

"A. Joy.

"Q. When you got ready to cross what did you do?
"A. I looked and run.
"Q. Did you walk or run?
"A. Run.
"Q. You ran across. Were any cars parked there where you were crossing?
"A. Yes, sir, two.
"Q. Now, which one did you cross in front of?
"A. That little one.
"Q. The little one. You say you didn't see the truck before it hit you?
"A. No, I didn't see the truck.
"Q. What happened to the other boys?
"A. They run home and told their mothers.
"Q. Did they go across at the same time that you did?
"A. No, they stood on the side. They saw it and I didn't."

There was a sharp conflict of evidence as to whether the word "School" was painted on Worsham street, in the manner and at the places mentioned prior to the date of the accident. This conflict the jury apparently resolved in favor of the plaintiff.

Upon the conclusion of the above testimony, presented by the plaintiff, the defendant moved to strike the evidence on the ground that it was insufficient to support a recovery for the plaintiff. The motion was overruled, the jury instructed, and a verdict returned in favor of the plaintiff in the sum of $1,250.

 The attorneys for plaintiff must have realized that plaintiff could not recover upon his testimony alone. The testimony of the defendant as to the happening of the accident was uncontradicted. Moreover, it was fully corroborated by the plaintiff's testimony. They called the defendant, the only eye-witness, seeking some additional fact which would sustain the right of plaintiff to a recovery. They were, therefore, bound by such of his statements as were clear, logical, and reasonable, and not in conflict with evidence introduced on behalf of the plaintiff. As we said, under a similar situation, in *Saunders* v. *Temple,* 154 Va. 714, 153 S. E. 691, "The difficulty which the court has in taking their view of the record as a whole is the same difficulty which they had before they attempted to extract some incriminating evidence from the defendant as a witness. That

obstacle to a recovery is the fundamental rule that the burden always rests upon the plaintiff to establish his case by the weight of the testimony. The defendant cannot be held responsible for the negligence charged upon a bare 'perhaps.' ''

The duty imposed upon the driver of a motor vehicle approaching or passing children in or near a street or highway has been stated and re-stated by us in a long line of cases beginning with *Ball* v. *Witten,* 155 Va. 40, 154 S. E. 547; and concluding with *Clark* v. *Hodges,* 185 Va. 431, 438, 39 S. E. (2d) 252; and *Williams* v. *Blue Bird Cab Co.,* 189 Va. 402, 52 S. E. (2d) 868.

■ Stated generally, the rule is that if a driver sees, or should have seen, the presence of a child in or near the street that the law imposes upon him the duty to take into consideration that the child might act thoughtlessly and upon childish impulses, and requires him to exercise that degree of care that a person of ordinary prudence would exercise, under similar facts and circumstances, to avoid danger of injury to the child.

In cases where the evidence tended to show that the driver failed to keep a proper lookout or drove with improper speed, under specific circumstances, recoveries against the driver have been sustained.*

In those cases where it appeared that the driver did not see, and could not have seen, the child by the exercise of reasonable care, and the injured child had suddenly entered the street from behind an obstruction into the path of the oncoming vehicle and so close to the approaching car that the driver had no reasonable

---

* *Ball* v. *Witten, supra*: (Children in road walking in same direction in which defendant was driving); *Trant* v. *Upton,* 159 Va. 355, 165 S. E. 404: (Child in road where he could have been seen by driver in ample time to have avoided injury); *Carlton* v. *Martin,* 160 Va. 149, 168 S. E. 348: (Child alighting from school bus to highway struck by speeding driver); *Chapman* v. *Dillard,* 162 Va. 389, 174 S. E. 657: (Child crossing street to enter school should have been seen by driver); *Irvine* v. *Carr,* 163 Va. 662, 177 S. E. 208: (Child running across road, struck by speeding driver); *Wynn* v. *Gandy,* 170 Va. 590, 197 S. E. 527: (Child shoved under a school bus, moving slowly along street, by children crowding around and running after bus for purpose of getting on it); *Harris* v. *Wright,* 172 Va. 67, 200 S. E. 597: (Child riding in a toy wagon on road); *Scott* v. *Crawford,* 172 Va. 517, 2 S. E. (2d) 301: (Child riding a bicycle on highway); *Myers* v. *Bush,* 178 Va. 375, 17 S. E. (2d) 382: (Child walking on dirt shoulder of highway in plain view of driver); *American Tobacco Co.* v. *Harrison,* 181 Va. 800, 27 S. E. (2d) 181: (Child within view of driver descended steps and ran into street); *Virginia Stage Lines* v. *Spencer,* 184 Va. 870, 36 S. E. (2d) 522: (Child injured by bus backing into service station lot).

opportunity to avoid striking the child after seeing him, recoveries against the driver have been denied.*

The facts in this case are practically identical with those in *Clark* v. *Hodges, supra,* except that here the accident happened between intersections and in the *Clark Case* occurred at an intersection. The defendant, driving her car along one of the principal streets of the city of Norfolk, at a speed of 15 to 20 miles an hour, struck a four-year old child, when he darted from the sidewalk out of a place of obscurity in front of a parked car into the street and into the path of the Hodges car as it was passing the parked car. At sight of the child, she applied her brakes, turned to the left, and stopped within the length of her car. There was a tricycle on the sidewalk which the defendant did not see. It was contended the tricycle put the defendant on notice that the child was near-by and might run into the street, whereas, in the present case, it is contended that the two boys standing on the sidewalk in the rear of the Buick convertible put Boyd on notice that the plaintiff, a third boy, was near-by and might run into the street in front of the truck. A verdict and judgment for the defendant were affirmed on appeal.

In *Williams* v. *Blue Bird Cab Co., supra,* several children were playing in the street, when a taxicab came in sight. The children divided, some going to the left side and two or more larger boys to the right. As the cab continued its approach, a two-year old child ran out into the street immediately in front of the cab. The cab driver saw the group of children in and near the street as he approached; but did not see the two-year old child until after she was struck, because she was apparently behind some of the larger children. A verdict for the defendant was approved by the trial court and affirmed on appeal.

In this case it is argued on behalf of the plaintiff that the circumstances of the warning painted on the pavement, the time of day and the known presence of two children on the sidewalk put the defendant on notice of the danger in the situation, and that he should have blown his horn in warning and decreased the speed of his truck. It is also insisted that it was reasonable for

---

\* *Messick* v. *Mason,* 156 Va. 193, 157 S. E. 575: (Child ran from behind truck used as school bus into the path of oncoming vehicle); *Fagg* v. *Carney,* 159 Va. 118, 165 S. E. 419: (Child on skates suddenly darted from behind a wagon in front of defendant's car proceeding in opposite direction); *Wash* v. *Holland,* 166 Va. 45, 183 S. E. 236: (Child ran from the walk of her home to highway and in front of defendant's car); *Clark* v. *Hodges, supra;* and *Williams* v. *Blue Bird Cab Co., supra.*

the jury to determine that his speed was in excess of 15 or 20 miles per hour, and that if a proper lookout had been maintained, he could have seen the plaintiff the moment the latter cleared the Buick.

It must be remembered that the burden was on the plaintiff to prove not only that the defendant was negligent; but that his negligence was the proximate cause of the accident. A mere inference of the possibility of defendant's negligence was not sufficient to establish his liability. The clear, reasonable and uncontradicted testimony of the defendant is binding upon the plaintiff. The facts and circumstances are not such as to point by a fair and reasonable inference to the conclusion that the defendant was negligent. *Messick* v. *Mason,* 156 Va. 193, 157 S. E. 575. If the accident did not happen like Boyd said it did, we must speculate as to how it occurred.

Worsham street is not in a school zone. It is one-quarter of a mile from the nearest school on the west. The cross-walk at the Meade street intersection was for the school children who lived east of Worsham street. The accident occurred between intersections and near Plum street where there was no cross-walk. There was no evidence that the defendant failed to keep his truck under proper control, that he failed to keep a proper lookout, or that he drove at an unreasonable rate of speed. He was travelling on the right side of an important thoroughfare of the city, close to its center line, well under the speed limit prescribed by the city. Keeping a lookout for children, he saw two boys on the sidewalk facing each other and talking, without any indication on their part that they would move or run from the sidewalk into a place of danger. He did not see the plaintiff, who was obscured from his view by the forepart of the Buick car, until the child ran into the street so close to the truck that contact could not be avoided. He acted promptly and used all available means to stop his truck immediately upon discovery of the presence of the child.

The child says that he did not see the truck before he ran out, and the reason therefor is doubtless the same as that which prevented a view of him by the defendant, that is, the presence of the Buick convertible.

There is no evidence whatever that the defendant could or should have seen the plaintiff before he ran into the street from in front of the Buick convertible. The defendant saw and passed

in safety the two boys standing on the sidewalk talking. At the same time he kept a lookout for traffic upon the street. The physical facts show that he was driving just where he should have driven. There was nothing to challenge his attention to the presence of the plaintiff, or to cause him to anticipate that he was obscured by the front end of the Buick. There was no probable danger to the two boys standing on the sidewalk talking, and he was not required to blow his horn and alarm them.

The accident was deplorable; but the evidence fails to show that it was due to any violation of duty imposed by law upon the defendant. ''The defendant cannot be held responsible for the negligence charged upon a bare 'perhaps.' '' He was not an insurer of the safety of the child.

For the reasons stated, we are of opinion that the evidence is insufficient to sustain the verdict, and accordingly the judgment of the trial court is reversed, the verdict of the jury set aside, and final judgment entered here in favor of the appellant, Boyd.

*Reversed and final judgment.*