# Richmond

RICHARD B. RICHARDSON v. THOMAS MARTIN LOVVORN, AN INFANT, ETC.
RICHARD B. RICHARDSON v. THOMAS R. LOVVORN.

January 20, 1958.

Record Nos. 4731, 4732.

Present, All the Justices.

The opinion states the case.

*Lawson Worrell, Jr.* (*Williams, Cocke, Worrell & Kelly; Breeden, Howard & MacMillan*, on brief), for the plaintiff in error.

*William A. Redfern, Jr.* and *W. L. Devany* (*Devany & Redfern*, on brief), for the defendants in error.

MILLER, J., delivered the opinion of the court.

These cases were tried together before the same jury. Thomas Martin Lovvorn, an infant, was awarded a verdict and judgment against Richard B. Richardson, hereinafter called defendant, for $15,000 for personal injuries sustained when Lovvorn was struck by an automobile operated by defendant. Thomas R. Lovvorn, father of Thomas Martin Lovvorn, was awarded a verdict for $2,500 against Richardson for medical and hospital expenses incurred as a result of the injuries sustained by his son. This verdict was reduced by the court to $1,044, the proved expenses incurred, and judgment was entered for that sum.

The two judgments are now before us for review.

The three errors assigned in each case by defendant strike at the sufficiency of plaintiffs' evidence. They are that the court erred (a) when it overruled defendant's motion to strike plaintiffs' evidence, (b) when it overruled defendant's motion to set aside the verdict, and (c) when it entered final judgment on the jury's verdict.

An examination of the record shows that defendant made no objection or exception when the court overruled his motion to strike plaintiffs' evidence. His assignment of error to that ruling will not now be considered by us. Rule of Court 1:8, Burks *Pleading and Practice*, 4th ed., § 284, at pp. 510, 516.

Defendant offered no evidence and made no assignment of error to any instruction given by the court. He did move to set aside the verdicts as contrary to the law and the evidence and grant him a new trial. The court's ruling on that motion is the assigned error now before us for consideration.

Defendant conceded in the trial court and now concedes in this court that he was guilty of negligence in having operated his automobile at an unlawful speed. He insisted that plaintiffs had failed to prove that his negligence was a proximate cause of the mishap.

Plaintiffs contended in the trial court that not only was defendant guilty of negligence by operating his automobile at an unlawful speed but that he was negligent in failing to keep a proper lookout. They assert that the evidence is sufficient to show that his negligence in either or both of these respects was a proximate cause of the tragedy.

The accident occurred in the city of Norfolk, Virginia, on January 15, 1956, about 3:30 p. m. Defendant and the injured youth were the only witnesses to the mishap. The latter, who was seven years and four months old, received severe and disabling head and brain injuries. Neither he nor defendant testified at the trial held on October 19, 1956.

Galveston Boulevard, the hard surfaced street on which the boy was struck, extends in a northerly and southerly direction and is intersected by El Paso avenue. On each side of Galveston Boulevard, which is sufficiently wide to accommodate two-way traffic, are dirt shoulders six to eight feet wide. On the block in which the mishap occurred, there are only two residences, one on each side of the street. Much of the other property to the east and west of the street was then overgrown with leafless, dead weed stalks which varied from six inches to four feet in height. Testimony showed that this growth began eight or ten feet from the hard surface of Galveston Boulevard, and one traveling along that street could see from twenty-five to thirty feet into the weeds. On the eastern side of the street a pathway extended through the weeds into the vacant field.

Shortly after three o'clock on the afternoon of the accident, Thomas Martin Lovvorn, who was four feet, four inches tall and dressed in bright colored clothing, i.e., green coat, yellow shirt and wine-colored hat, left his home on El Paso avenue about a hundred yards distant from the scene of the accident to play. Fifteen minutes later Thomas R. Lovvorn "heard the tires of a car being put on; a car squealing * * *", and a moment thereafter he was notified that his son had been injured. Upon arrival on the scene he saw defendant, who lived about a block and a half from the scene, standing in Galveston Boulevard near his car, which was on the hard surface about five feet from its east edge headed in a northerly direction. Young Lovvorn was lying unconscious on the eastern shoulder of the road about one hundred feet north of El Paso avenue and approximately twenty-three feet north of defendant's automobile. His clothing was badly torn and his shoes had been knocked off, but where

his shoes were was not stated. The street was dry and level, and four-wheel skid marks extended back in a southerly direction from the rear of the car to a point about eight feet south of the footpath that goes into the weeds. These skid marks were measured and found to be as follows:

"A. The left front wheel measured 60 feet 3 inches; the left rear wheel, 60, 1 inch; the right front wheel, 50, 5 inches; the right rear wheel, 66 feet."

The average length of the marks is 59 feet, 2 inches. These marks were nearly straight but slanted slightly to the west, and the most eastern mark was about five feet from the eastern edge of the hard surface. Young Lovvorn's hat was lying on the hard surface slightly north of the southern end of the skid marks about opposite the path through the weeds.

A plat and three pictures also introduced in evidence showed the character and height of the weeds, the width of the street and shoulders, and the location and character of the skid marks. There was no evidence to indicate that there were any other vehicles or traffic in the block when the accident occurred. Numerous children lived in the vicinity and played at times in the vacant fields; ten to fifteen were out playing in the neighborhood at the time.

The speed limit in the area was 25 miles an hour. Defendant was questioned by a police officer at the scene. He admitted that he was driving between 30 and 35 miles an hour and that his car came in contact with the boy, but the spot where Lovvorn was when defendant saw him was not stated or determined. Nor does any other testimony tend to show whether the boy entered the street from its eastern or western side or where along the automobile's course he was struck.

Officer Miller gave defendant's car what is called the skid test for four wheel brakes that afternoon in the block where the accident occurred to determine the speed of the vehicle when the 59 feet, 2 inches, of skid marks were made. This indicated that the car was traveling at a speed of 39 miles an hour when the brakes were applied.

At a speed of 35 miles an hour, the driver's normal reaction time would have accounted for or consumed about 38 feet before his brakes took effect, and his added breaking distance of 63 feet would make a total stopping distance of 101 feet. At 39 miles an hour his over all stopping distance would be somewhat greater. At 25 miles

an hour the reaction time, measured in distance, is 27 feet, and the over all stopping distance is 59 feet. Section 46-212(2), 1956 Cum. Supp., Code 1950.

The evidence conclusively showed that defendant operated his automobile considerably in excess of the speed limit of 25 miles an hour. The jury was also justified in concluding that he operated his automobile in violation of § 46-208 and § 33-281, Code 1950; both sections, enacted for the protection of the public, forbid the operation of a vehicle upon the public street or highway in such a manner as to endanger life or property of another.

■ The verdicts have been approved by the trial court and are entitled to more weight than if they had been set aside by that court.

"* * * [A] party fortified by a jury's verdict and the judgment of the trial court occupies the most favored position on appeal; all conflicts in testimony have been resolved in his favor, and the evidence and reasonable inferences therefrom must be viewed by the appellate court in the light most advantageous to him." Burks *Pleading and Practice*, 4th ed., § 428, p. 837.

Unless it appears from the evidence that such a judgment is plainly wrong or without evidence to support it, the judgment of the trial court shall not be vacated. Section 8-491, Code 1950, and cases cited; Burks *Pleading and Practice*, 4th ed., §§ 325, 427. Also see § 8-493, Code 1950, and Burks *Pleading and Practice*, 4th ed., § 428.

■ Yet a defendant's negligence must be proved, and it must appear from the evidence or be reasonably deducible therefrom that his negligence was a proximate cause of the mishap before he is liable.

"Negligence, no matter of what it consists, cannot create a cause of action unless it is the proximate cause of the injury complained of. The two must concur." 13 M. J., Negligence, § 21, p. 529.

"It must be remembered that the burden was on the plaintiff to prove not only that the defendant was negligent; but that his negligence was the proximate cause of the accident." *Boyd* v. *Brown*, 192 Va. 702, 711, 66 S. E. 2d 559.

Though a court or jury is not authorized to indulge in speculation or guesswork, yet this does not destroy the weight of admissions or circumstantial evidence. Proof of facts from which it can be reasonably inferred that an act or circumstance sought to be established occurred or existed is sufficient to authorize submission of the issue

to the jury. *Fairchild* v. *Detroit, etc. Railway Co.*, 250 Mich. 252, 230 N. W. 167.

In defendant's petition for appeal, he calls attention to the fact that the skid marks started opposite the footpath and that the boy's hat was lying just north of the beginning of the marks. Because Lovvorn's hat was found slightly north of where the skid marks began, defendant says "it might be inferred that that was where he was when he was struck." This inference is justifiable.

Plaintiffs' counsel call attention to the fact that if you infer, as does defendant, that the boy was struck where his hat was found, then you must assume or make the further inference that his body was carried 50 feet or more on the car and then propelled 23 feet ahead of where the car came to rest. They insist that the justifiable and more reasonable inference deducible from the proved facts, *i.e.*, admission of unlawful speed, 59 feet, 2 inches of skid marks, and the body lying 23 feet ahead of the car, is that Lovvorn was struck near the north end of the skid marks and knocked the 23 feet to where he was found. This inference is justifiable. Yet it was the peculiar province of the jury to evaluate all the facts and circumstances and determine which of these inferences should be made.

"A witness may describe the marks that he has observed near the place of an accident. The inference to be drawn from the testimony regarding such tire marks, skid marks, or scratches is solely the province of the jury. * * *

"The physical facts from which this question was to be answered were all presented to the jury. The issue did not call for the opinion of an expert. The jury was as competent to decide from the facts the point at which the impact took place as was the officer. * * *" *Danner* v. *Walters*, 154 Neb. 506, 48 N. W. 2d 635, 641.

The decision in *Godfrey, Administrator* v. *Queen City Coach Co.*, 201 N. C. 264, 159 S. E. 412, is in point. Defendant's coach collided with another car in which plaintiff's decedent was a passenger. There, as here, the alleged negligence of defendant was "excessive speed under the circumstances and failure to keep a proper lookout."

The question presented was "the legal sufficiency of the evidence to carry the case to the jury." Defendant contended that its violation of the speed limit was not shown to be a proximate cause of the mishap. In holding that the determination of that issue was for the jury, Stacy, C. J., said:

"The violation of a statute, intended and designed to prevent in-

jury to persons or property, or the failure to observe a positive safety requirement of the law, is, under a uniform line of decisions, negligence *per se.  Dickey* v. *R. R.,* 196 N. C., 726, 147 S. E., 15; *Ledbetter* v. *English,* 166 N. C., 125, 81 S. E., 1066.  And when a violation or failure of this kind is admitted or established, it is ordinarily a question for the jury to determine whether such negligence is the proximate cause of the injury.  *Stultz* v. *Thomas,* 182 N. C., 470, 109 S. E., 361." At page 267.

From the physical facts in evidence and the admissions of the defendant, it is plain that he approached the point of impact at an unlawful and reckless rate of speed.  The child, who admittedly was not capable of contributory negligence, was in the street, on the east or west shoulder or in the weed grown field on one side of the road.  Whether or not the child, dressed as he was in bright colors, should have been seen by the defendant in time to have avoided striking him had he been keeping a proper lookout and operating his car in a proper manner were questions of fact for the jury.

After considering all the facts and circumstances, the jury evidently reached the conclusion that the child was struck near the north end of the skid marks, as was contended by plaintiffs.  Then clearly defendant's excessive speed could be held to be a proximate cause of the accident for had he been driving within the lawful limit, he could have stopped before reaching the place where Lovvorn was struck.  The trial court sustained the jury's findings, and it is not within the province of this court now to say that the judgment appealed from is plainly wrong or without evidence to support it.

We conclude that the evidence sustains the verdicts and judgments.

*Affirmed.*

HUDGINS, C. J., EGGLESTON AND WHITTLE, JJ., dissenting.

EGGLESTON, J., dissenting:

An injury to a small child arouses our sympathy, and when, as here, it is shown that the injury is caused by a negligent driver of an automobile there is a natural inclination to attempt to devise a way of fastening legal liability for the injury upon the driver.  But the desired end should not be reached by disregarding well settled principles.

It is elementary that in an action of this character, the burden is on the plaintiff to prove both the negligence of the defendant driver and causal connection between that negligence and the injury. While proof of causal connection is for the jury, there must be evidence to sustain a finding of that essential element. The admission by the defendant at the scene that he was driving from five to ten miles in excess of the lawful speed limit of twenty-five miles per hour was proof of negligence. But neither this nor the speculation of a police officer that he may have been driving faster warranted the jury in finding that such speed was a proximate cause of the accident.

Obviously, the gist of the plaintiff's case is that in the exercise of ordinary care the defendant driver should have seen the child in time to have avoided striking him. Proof that he was driving in excess of the speed limit does not establish this. The burden was on the plaintiff to show that when the child went into the street the defendant's automobile was a sufficient distance away for the defendant, in the exercise of ordinary care, to have avoided striking him. To my mind the proof on behalf of the plaintiff falls far short of this. We are not told where the child came from, when he went into the street, or how far the car was away when he did so. Assuming that the child was thrown ahead of the car by the force of the impact, that does not establish the fact that before the impact the child was a sufficient distance ahead for the driver of the car to have avoided striking him had the car been driven at the permitted speed of twenty-five miles per hour. From all the record shows, it is just as likely that the child came into the street so close to the front of the car that the defendant, in the exercise of ordinary care, could not have avoided striking him.

I would reverse the judgments, set aside the verdicts and remand the cases for a new trial and a new inquiry into the critical issue.

CHIEF JUSTICE HUDGINS and JUSTICE WHITTLE concur in this dissent.