# Richmond

## WALTER LEE MOSLEY v. VERNON B. CHENAULT.

June 11, 1962.

Record No. 5438.

Present, All the Justices.

*Henry M. Sackett, Jr. (Williams, Robertson & Sackett, on brief),* for the plaintiff in error.

*Paul Whitehead (J. Frank Shepherd, on brief)* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Vernon B. Chenault, referred to herein as plaintiff, brought this action for damages for injuries received in a collision between his automobile and one operated by the defendant, Walter Lee Mosley. A jury returned a verdict in his favor for $30,000, on which judgment was entered and the defendant appeals. The issue developed by the evidence was, on whose side of the road did the collision occur.

The accident happened about 3:40 p.m., April 10, 1959, on State route 26, a few miles north of the town of Appomattox. The road at that point ran north and south, was 16 to 18 feet wide, and divided into a northbound lane and a southbound lane by a broken white line in the middle. The road was dry at the time of the accident. The plaintiff was driving south. As he approached the place of the accident he came down a hill, at the bottom of which was a small bridge over a creek, from which point the road proceeded uphill for about a quarter of a mile. The defendant was driving down the latter hill going north, and the two cars collided at a point 60 or 70 yards south of the bridge. The plaintiff and the defendant were the only eye-witnesses to the accident. The plaintiff testified that when he crossed the bridge, driving in his right-hand lane, at a speed of 35 to 40 miles, he saw the Mosley car coming over the top of the hill "straddling" the white line; that a little farther on it got back over on its side but as it came on it "swayed" over again to the plaintiff's side. The plaintiff "jammed" on his brakes and had practically or completely stopped when his car was struck by the defendant's car when the defendant tried to get back to his side of the road; "he [defendant] tried to get back but he was traveling at a high rate of speed and didn't make it".

Plaintiff testified that he was definitely in his lane of travel, the west lane, when he was struck and he estimated the speed of the defendant's car "at a good sixty miles an hour". After the collision the defendant's car went on down the hill and was later found 100 feet away, over the bank on the west, or plaintiff's, side of the road, out of view of the people who first came to the scene.

Two witnesses for the plaintiff were in a car going north, close behind the defendant. They came over the crest of the hill and saw the dust from the collision and smoke from the plaintiff's car, which was sitting in the west, or southbound, lane. They stopped farther down the hill and came back to render aid to the plaintiff, who was badly injured. They testified that the plaintiff's car was sitting in its right-hand lane about 12 inches from the white center line and they carried dirt from the bank on the opposite side and threw it on the motor to put out the fire. There was testimony from another witness that soon after the accident she drove south and stopped her automobile behind the plaintiff's car, which was in its right-hand lane.

The defendant testified that he was running about 40 or 45 miles an hour; that when he first "hit the hill" he did not see the plaintiff

but when he was about 200 feet away he saw him on his (plaintiff's) side of the road, "like I was on mine"; that when the plaintiff "got opposite me he came straight into me"; that the first thing he (defendant) did was "hit the brakes, cut to the right a little bit, and he hit the front wheel and that broke the front wheel back and I had no brakes"; that the hood flew up and he did not know where he was going and when the car stopped the door flew open and he went back and asked what was wrong, but the plaintiff told him to go away, he didn't want to talk to him. He testified that as he proceeded down the hill to where the accident happened he was on his right-hand side of the road and was in his lane of travel when the collision occurred.

The defendant does not deny that on this conflict alone the questions of where the accident occurred and whose was the fault were for the jury. His contention is that the physical facts demonstrated that the accident happened in the defendant's lane of travel and rendered plaintiff's evidence incredible. He relies on certain photographs and the testimony of his witness Reynolds, who was then a State trooper.

Trooper Reynolds testified with respect to three pictures taken while he was at the scene shortly after the accident by Trooper Hollandsworth showing the road and the plaintiff's car in the road to its right of the white line. Reynolds testified that upon his arrival at the scene the plaintiff's automobile was as shown in picture "A", with its front end in the southbound lane about six inches from the white line and its right rear over next to the right edge of the highway. "There was a gouged mark in the asphalt that was fresh that can be seen in the form of a white line leading from the rim of the left front wheel [of the plaintiff's car] and extending from it to a point two feet from the white line in the road and beginning over here in the northbound lane, extending up to the vehicle. There were fresh brake marks in the northbound lane, burn marks, and debris being thrown in a circular fashion around over here where the other vehicle went." The trooper further testified that the skid marks shown on picture "B" in the northbound lane led to the defendant's car, which was over the west bank of the road and 100 feet north of the collision; and that the gouge mark referred to in picture "A" started in the northbound lane two feet from the white line and extended to the rim of the left front wheel of plaintiff's car in the southbound lane.

Defendant argues that this testimony requires the application of

the principle stated in *Burke* v. *Scott*, 192 Va. 16, 23, 63 S. E. 2d 740, 744, that "A tire mark in a road is a physical fact. If it be admitted or proved that it was made by the plaintiff's car, and if that could not be true unless the plaintiff's account of the accident be untrue, then the plaintiff's evidence is incredible and a verdict founded on it cannot stand."

But we also said in that case that "if the evidence is conflicting as to whether the mark was made by the plaintiff's car, and reasonable men could differ about it, the issue is for the jury and their verdict cannot be disturbed." In such case a witness may describe the marks that he observed at or near the place of an accident, but the inference to be drawn from the testimony regarding such tire marks, skid marks, or scratches, is for the jury. *Richardson* v. *Lovvorn*, 199 Va. 688, 693, 101 S.E. 2d 511, 514.

The pictures referred to by the trooper were before the jury, as was Trooper Hollandsworth who took them. The latter was asked whether there was anything in his observation at the scene to relate the skid marks to the defendant's car, and he said he did not remember. The skid marks shown in the pictures appear to turn toward the bank to the defendant's right and the jury could have doubted that they were made by the defendant's car, which was some hundred feet away and on the opposite side of the road.

Furthermore, a witness for the plaintiff who traveled this road frequently testified that he had driven south over the place where the accident occurred just an hour or two before it happened and then saw black marks on the northbound (defendant's) lane "as if someone had been spinning the wheels, pulling away or sliding the wheel to stop". He came to the place of accident before the plaintiff was removed from his car and helped in taking the plaintiff out of the car and in throwing dirt on the motor to put out the fire. He testified that the plaintiff's automobile was in the southbound lane 12 to 18 inches from the middle of the road. There was not, he said, very much debris in the road, mostly glass from the headlights of the plaintiff's car and dirt from its fenders, most of which was in the southbound lane. He thought he discussed with the trooper the tire marks at the scene, which were there, he said, when he went by before the accident and still there when he came back to the accident. He said the plaintiff's car made no tire marks of any kind.

The gouge mark testified about by Trooper Reynolds is not visible in two of the three pictures, and no other witness testified to seeing it. One of plaintiff's witnesses testified that the trooper told him he

did not think that the plaintiff was at fault until after the pictures were developed, and they indicated that he was. Moreover, when the jury examined picture "A" they could have disagreed with the trooper that the gouge mark was made by the plaintiff's car. The trooper said it started in the defendant's lane. The defendant was going downhill, yet the picture indicates that the mark slanted uphill across the white line. The plaintiff testified, and the jury could have believed, that he had stopped before he was struck. If so, it would be unlikely that the force of the blow would have knocked the plaintiff's car uphill in the opposite direction from the way the defendant's car was going.

It cannot be said that the physical facts conclusively show that the collision occurred in the defendant's lane, and that the testimony that it happened in the plaintiff's lane is incredible. The question was for the jury to decide. They decided it in favor of the plaintiff, the court approved their verdict and it cannot properly here be disturbed.

The judgment below is

*Affirmed.*