## Richmond

FRANK C. MALONEY, III, ADM'R, ETC. v. JAMES E. WILSON.

June 15, 1964.

Record No. 5742.

Present, All the Justices.

*Frank C. Maloney, III* (*Cary L. Branch; Allen, Allen, Allen & Allen*, on brief), for the plaintiff in error.

*Oliver A. Pollard, Jr.* and *F. L. Wyche* (*White, Hamilton, Wyche & Shell*, on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Maloney, Administrator of the estate of Bennie R. Bentley, deceased, filed a motion for judgment against Wilson, seeking to recover damages for the alleged wrongful death of his decedent. At the conclusion of plaintiff's evidence the court sustained defendant's motion

to strike and entered final judgment for the defendant. We granted plaintiff a writ of error.

The sole question presented is whether the trial court erred in sustaining defendant's motion to strike plaintiff's evidence and entering final judgment for defendant.

The only known facts concerning Bentley's death come from defendant Wilson who was called as an adverse witness and from officer King who came upon the scene 10 minutes after the happening.

On June 5, 1961, shortly after 11:00 p.m. Bentley was discovered lying in a ditch along route 460 near its intersection with route 492 in Prince George county. Just prior to the discovery of Bentley there had been a collision between a west bound car owned and operated by defendant Wilson and a Ford automobile owned by Bentley. When Bentley was found, he was still alive but completely unconscious. He was rushed to a hospital where he died an hour later from the injury received. The first time Wilson saw Bentley was after the accident when he was discovered in the ditch. Although it was alleged in the motion for judgment that prior to the collision between the two cars "the decedent was standing by his automobile", there was no evidence presented showing where Bentley was or what he was doing prior to the accident.

Wilson testified that he was driving west along highway 460, a four lane highway with outside concrete traveling lanes and inside blacktop passing lanes; that he was traveling at approximately 50 miles per hour; that his car was in proper working order; that at approximately 600 yards from the point of collision he overtook a truck, dimmed his lights and passed the truck; that after passing the truck he switched on his upper beam lights and turned back into the lane of travel at a point approximately 100 yards from the point of collision; that at this time he saw something shiny, about the size of a baseball, in the highway ahead of him; that at 50 yards away he began to "visualize the outline of an automobile"; that at 20 to 25 yards away he realized this unlighted automobile was not moving and was parked immediately in his lane of travel; that he applied his brakes, cut sharply to the left and struck the left rear of decedent's car with the right front of his car; that the decedent's car was knocked 44 feet to the right off the highway and the defendant's car veered to the left in a semi-circle coming to rest facing east in the west bound lane of travel 38 steps from the point of impact; that he, the defendant, was slightly injured about the face and

was slightly dazed; that he remained in his automobile until officer King arrived about 10 minutes later.

The physical facts disclosed that prior to the collision decedent's automobile was parked in the driving lane of the highway in violation of § 46.1-248 Code of Virginia of 1950; there were no tail lights or headlights burning on the automobile, but a front parking light was burning after the collision. The point of impact was indicated by a mark made by the decedent's automobile on the concrete traveling lane about 18 inches from the blacktop passing lane. The doors of the decedent's automobile were found to be closed. Decedent's automobile was damaged at its left rear and the left tail light was knocked off.

Defendant's automobile was damaged at the right front where it collided with decedent's automobile; there was also damage to the left headlight and bits of hair and flesh were found on the radio antenna and mirror on top of the left fender and on the chrome on the left side of the windshield.

As aforesaid, the defendant never saw plaintiff's decedent until after the collision when he was discovered lying about 15 feet off the opposite side of the paved highway slightly west of the point of collision.

The highway was straight and level for approximately eight tenths of a mile and there was a 13 foot dirt shoulder at the point of collision. The night was clear, dry and normal.

Officer King and defendant Wilson were the only witnesses testifying who knew anything regarding the accident. Defendant Wilson was more or less corroborated by officer King as to the physical facts surrounding the accident, and there was no difference between what Wilson told King immediately after the accident and what he testified to at the trial of the case.

Plaintiff argues that inferences can be drawn from the testimony which should make out a prima facie case of negligence on the part of the defendant, which negligence was a proximate cause of the collision, and that he was entitled to have the case submitted to the jury.

There is a basic principle of common law to the effect that he who alleges negligence must prove it. Such evidence must prove more than a probability of negligence and any inferences therefrom must be based on facts, not on presumptions. It is incumbent upon the plaintiff who alleges negligence to show why and how the accident happened, and if this is left to conjecture, guess or random judg-

ment, he cannot recover. *Brooks, Adm'r* v. *Hufham*, 200 Va. 488, 494, 106 S.E. 2d 631, 636; *Spurlin, Administratrix* v. *Richardson*, 203 Va. 984, 987, 128 S.E. 2d 273, 276; *Weddle, Administratrix* v. *Draper*, 204 Va. 319, 322, 130 S.E. 2d 462, 465; 13 M.J. Negligence, § 58, page 589.

If the testimony of Wilson, who was called as an adverse witness, is taken from the case, no one would know what happened on this occasion. There is nothing in Wilson's testimony showing negligence on his part. The rule is that when a defendant is called as an adverse witness the plaintiff is not bound by such of his testimony as is in conflict with evidence introduced by the plaintiff; but the plaintiff is bound by so much of his testimony as is clear, reasonable and uncontradicted. See *Boyd* v. *Brown*, 192 Va. 702, 708, 66 S.E. 2d 559, 563; *Weddle, Administratrix* v. *Draper, supra*, 204 Va., at page 322, 130 S.E. 2d 462; 32 C.J.S., Evidence, § 1040, pp. 1104-1107.

As we interpret the evidence in the record before us it fails to disclose any primary negligence on the part of the defendant which proximately caused the death of plaintiff's decedent. *Chesapeake & Ohio Ry. Co.* v. *Heath*, 103 Va. 64, 66, 48 S.E. 508; *Arnold* v. *Wood*, 173 Va. 18, 24, 3 S.E. 2d 374, 376.

For the reasons stated we find that the plaintiff has failed to make out a prima facie case of negligence. In this view, it becomes unnecessary for us to consider whether or not plaintiff's intestate was guilty of contributory negligence. The trial court properly struck the evidence and entered summary judgment for the defendant. The judgment is

*Affirmed.*