LLOYD H. BURTON v. CHARLES B. OLDFIELD, ADMINISTRATOR, &c.

September 10, 1952.

Record No. 3945.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller and Whittle, JJ.

44

The opinion states the case.

*Rixey & Rixey,* for the plaintiff in error.

*Pender, Coward & Boswell,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Carl Heglmeier, a sailor in the United States Navy, was struck and killed by an automobile owned and driven by Lloyd H. Burton, defendant below. His administrator brought this action against Burton alleging that the accident was due to his negligence, and obtained a verdict and judgment against him, which Burton seeks now to have reversed and a final judgment entered in his favor or a new trial granted.

Defendant contends, first, that the evidence fails to establish that he was guilty of negligence; but if it does, that it also establishes that the decedent was guilty of contributory negligence.

The accident occurred between 1:30 and 2:00 a.m., December 10, 1950, on Route 58, between Virginia Beach and Norfolk, about four-tenths of a mile east of Davis Corner. At that point the road is a dual highway—two lanes west and two lanes east— separated by a dirt parkway 4 feet 2 inches wide, which is

bordered by a curb 6 to 8 inches high. The hard surface on each side of the parkway is 24 feet wide, but had not then been divided by white lines. There was a shoulder on the north side which was just barely enough for a car to get on. The road was straight for a mile and a half from the place of accident back east toward Virginia Beach.

A State trooper, testifying for the plaintiff, said the road was dry at the time of the accident. A witness for defendant said it was wet and raining slightly just a short time before. Testimony as to visibility ranged from calling it all right to saying it was misty or foggy and very bad. Burton testified it was a very dark night, hazy, and that the visibility was not normal.

Just before the accident happened the decedent and four other sailors were riding along this road in a 1940 Ford sedan, going from Virginia Beach west toward Norfolk. The car stalled from overheating and after a wait of about five minutes four of the sailors, including decedent, got out and began pushing it, while the fifth, the owner of the car, sat behind the wheel and steered. The sailors were dressed in blue suits with white caps. They had been pushing the car for ten or fifteen minutes and had gone about a quarter of a mile, either trying to get it started or to get it to a gas station a short distance ahead. The four surviving testified that the headlights and the left tail light were burning. One of them testified that a light over the license plate was also burning. The tail light on the right had been broken. The decedent, they said, was pushing on the left side of the car, while the other three were back of the trunk, not covering or concealing the lights.

The defendant, in a practically new 1950 Buick, with his wife beside him on the front seat and another couple in the back seat, was driving toward his home in Norfolk from a dance at Virginia Beach. He was driving, he said, on his right-hand side of the road at a speed of 50 to 55 miles an hour when he suddenly saw this vehicle about 100 feet in front of him, with no lights on it and near the center of the road, with some people at the back of it dressed in dark clothes. He immediately put on his brakes, tried to avoid a collision by turning to his left, but the right side of his car struck the left rear corner of the Ford, "raking" the whole right side of the Buick. The Ford was knocked about 15 feet. The body of Heglmeier was lying 66 feet in front of the

Ford and approximately 81 feet from where he was struck by the Buick.

Marks on the road showed that the Buick had skidded approximately 60 feet before striking the Ford, then skidded 42 feet more before striking the parkway; then crossed the parkway and traveled 534 feet before stopping in the east-bound lane on the opposite side of the parkway.

Reeb, one of the sailors, who was pushing at the right rear of the Ford, testified that when the lights of the Buick shone on the back of the Ford he looked around, holloed that it was going to strike and ran to the right. He estimated the speed of the Buick at 90 miles an hour.

Burton testified that they had been meeting traffic and that he would lower his lights and then raise them, and that he was almost positive they were on low beam when he saw the Ford; that the visibility would have been better with the high beam.

Under this evidence, and other of like tenor, the question of whether Burton was guilty of negligence was for the jury to answer. Very clearly it cannot be said as a matter of law he was not negligent. The maximum speed limit on that area of the road was 55 miles an hour. By his own testimony he was driving approximately that fast at a time when he said it was hazy and driving conditions were not normal. From other testimony and the physical facts, the jury could conclude that he was running much faster than that, under conditions where reasonable care would have counseled against running at maximum speed, with his lights on low beam, so that he did not see the car and the people in front of him until within 100 feet of them. The jury could say that there was negligent speed or negligent lookout, or both.

The sailors testified that as they pushed the car along the road its right wheels were close to the right-hand edge of the pavement. If so, there was room for the decedent to push on the left and still be well within the right-hand lane and clear of the passing lane. But defendant testified that the Ford was near the center, and the State trooper said the marks on the road indicated that the left wheels of the Ford were just about where a white line in the middle of the road would have been, making the body of the Ford extend a few inches into the passing lane, and the decedent at the side of the Ford correspondingly farther

into that lane. Just where the car was and whether its lights were burning, where the plaintiff's decedent was and whether under the conditions as the jury might find them to be he failed to use reasonable care and was therefore negligent in what he did, were also factual questions properly to be resolved by the jury from the conflicting evidence.

The questions which should have been submitted to the jury were simply whether the defendant was guilty of negligence, and if so, whether the plaintiff's decedent was guilty of contributory negligence.

But there was also submitted to the jury by the instructions a question as to the defendant's last clear chance. The defendant argues that this action of the court was error and we agree. There was no room in the case under the evidence for that issue and it was error to submit it to the jury.

The doctrine of last clear chance is to be applied with caution, and a plaintiff is not entitled to recover under it on mere peradventure. The burden is on him to show by a preponderance of the evidence that the defendant was negligent in what he did or failed to do after he discovered or should have discovered that plaintiff was in a situation of helpless or unconscious peril. *Anderson* v. *Payne*, 189 Va. 712, 54 S. E. (2d) 82.

The defendant testified that he saw the plaintiff's intestate when he was approximately 100 feet away. He was then driving between 50 and 55 miles an hour, according to his evidence, and faster according to evidence for the plaintiff. His lights were on low beam, he said, and visibility was not normal.

The last clear chance doctrine presupposes time for effective action and is not applicable when the time is too short to avoid the accident by exercising reasonable care. *Hutcheson* v. *Misenheimer*, 169 Va. 511, 194 S. E. 665; *Stark* v. *Hubbard*, 187 Va. 820, 48 S. E. (2d) 216. The evidence does not show that under the prevailing conditions there was time for effective action after the defendant discovered or should have discovered that the plaintiff was in a perilous position.

Again, the doctrine of last clear chance does not supersede the defense of contributory negligence. If opportunity to avoid the accident was as available to the decedent as to the defendant, then decedent's negligence was not a remote cause of the collision but continued as a proximate cause. *Lanier* v.

*Johnson,* 190 Va. 1, 55 S. E. (2d) 442; *Harris Motor Lines* v. *Green,* 184 Va. 984, 37 S. E. (2d) 4, 171 A. L. R. 359.

In determining whether the doctrine applies in this or any case, it is necessary to assume that the plaintiff was negligent. If the plaintiff's decedent here was negligent, his negligence resulted from the fact that while pushing the car he placed himself in a position in the road which a reasonably prudent person would have realized was dangerous under the conditions then existing. Included in these conditions are questions concerning traffic and visibility, the lights on the Ford and its position in the road while being pushed, whether at or near the right edge or near or across the center. If he was thus negligent, that negligence never became a remote cause of the collision, but necessarily existed and was active and efficiently contributing to the collision when it occurred. If decedent was in fact in a situation of peril, then he was responsible for getting into that situation, for continuing in that situation, and for failing to avail himself of his continuous opportunity to perform the task he was about in a safe place and in a safe manner. If the decedent was negligent, his negligence was necessarily a contributing cause of his death and the last clear chance doctrine was not applicable.

■ Defendant assigns error to the admission in evidence of Reeb's estimate of the speed of defendant's car, referred to above. Reeb estimated that when he first saw the Burton car it was about 90 feet away and defendant argues that he had no opportunity to make a valid estimate. We agree with the trial court that the evidence was admissible for such weight as the jury thought it should have.

■ We hold, however, that the evidence of defendant's witness, Bower, as to not seeing any lights on a car he passed, should have been admitted. The court excluded it because of insufficient identification of the car. Bower said that he left the dance at Virginia Beach about the same time as defendant testified he left; that at a place on the road, his description of which was similar to the description of the place of accident, he passed a car in the road which was being pushed along by apparently more than one person. He described the car as being an old model and he noticed that it had a small back window. In the lights of his own car he saw one sailor who had on a blue uniform

but no hat. The circumstances proved were sufficient to warrant the admission of this testimony on the question of lights so the jury might pass upon its weight.

The defendant also assigns as error the repeated reference in the instructions to the doctrine of last clear chance. This occurred in five instructions. Since we hold that there should not have been any instruction on last clear chance, it is not necessary to discuss this complaint.

The judgment below is reversed and the case remanded for a new trial to be had in accordance with the views herein expressed.

*Reversed and remanded.*