# Richmond

## Frank Bonich v. Rosalie W. Waite, Administratrix of the Estate of John William Waite, Deceased.

December 1, 1952.

Record No. 4005.

Present, All the Justices.

The opinion states the case.

*Bowles, Anderson & Boyd* and *J. Calvitt Clarke, Jr.,* for the plaintiff in error.

*Haw & Haw,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

In an action for wrongful death arising out of an automobile collision the administratrix of the estate of John William Waite, deceased, has recovered a verdict and judgment against Frank Bonich. On this writ of error the defendant seeks to have the judgment reversed and final judgment entered in his favor, because, he says, the plaintiff's decedent was guilty of contributory negligence as a matter of law, or else a new trial granted because of the alleged misdirection of the jury.

In their designation of the parts of the record to be printed, as required by Rule 5:1, § 6, counsel for both sides have failed to include all of the evidence which is material to a consideration of the assignments of error, and consequently it has been necessary for us to supply these omissions from the original transcript of the testimony. Indeed, the evidence incorporated in the printed record is so abridged that it fails to give a full and true picture of the facts developed before the jury. While an abbreviation of the printed record is highly desirable, the rule

contemplates that for the information and convenience of the court the designations embrace so much of the proceedings below, including all material evidence, as is pertinent to a full consideration of the assignments of error.

The accident occurred about 9:30 p. m. on April 9, 1949, at the "T" intersection of Hilliard Road and Woodrow Terrace in a suburban district of Henrico county, near the northern limits of the city of Richmond. Hilliard Road runs east and west, is straight for several blocks east of the intersection, and paved to a width of approximately twenty-two feet. Woodrow Terrace, which is slightly wider, runs north and south and intersects Hilliard Road from the south, but does not cross it. At the time of the collision the intersection was unlighted, the night dark, and the pavement dry. Hilliard Road is described by a witness as "heavily traveled * * * for a residential section."

John William Waite, aged fifty-nine, accompanied by his wife, drove his "black" 1935 Plymouth car north on Woodrow Terrace, intending to make a left turn at the intersection and go west on Hilliard Road. As he began the turn the tie rod of his car became disconnected, making it impossible for him to steer the vehicle and complete the intended turn. He drove the car forward and stopped with its front wheels in the shallow ditch on the north side of Hilliard Road and its rear extended partly into the north or westbound lane of the road.

The sequence of the occurrences is thus detailed by Mrs. Waite. After stopping the car, her husband got out while she remained seated in the car. He walked around to the front of the vehicle, stooped down and looked under it, then returned to the left-hand door, got in the car and "tried the wheel." Finding that the steering gear would not function he again got out of the car. About that time several eastbound cars passed safely along the unblocked southern lane but did not stop. Mrs. Waite got out on the right-hand side and walked around to the front of the car while her husband "walked into the road" to the left-hand side of the vehicle. She suggested that he hail a passing car but he replied that he could "manage" it. Waite then again walked to the front of the car, "kicked the (front) wheels," and returned to the left door. At that moment Mrs. Waite observed the headlights of an approaching westbound car, "about a good city block away," and said to her husband, "Here comes a car." Observing that the headlights of the approaching car

were shining full on her and the standing vehicle, she "told him the car was going to stop." She then "stepped back out of the road and looked down" to see that her dog was out of the road, and when she again looked toward the approaching car she saw from its undiminished speed that it was not going to stop and that a collision with the standing car was imminent.

The front of the approaching car, which turned out to be driven by the defendant, Bonich, struck the right rear of the Waite car with such force as to whirl it around, shove it a distance of thirty-six feet along the dry pavement, and leave it heading in the opposite direction to which it had been before the impact. Waite, who at the time of the impact was standing by the left door of his car, was struck by his own vehicle as it was whirled around and received injuries of which he died the next day.

The Bonich car came to a stop some eighty feet beyond the point of impact. After the collision the headlights of the Waite car were still burning. While the rear light was also burning it is agreed that because of the location of this light on the left rear of the car, and the angle at which the vehicle was standing at the time of the impact, it was not visible to the driver of a westbound car.

It developed that several years before the accident Bonich had lost both legs above the knees. At the time of the collision here involved he was driving a 1938 Oldsmobile equipped with a hand throttle and an automatic gear shift without a clutch. He was able to operate the brake by keeping his artificial foot on the pedal as he drove along. He had been licensed by the Motor Vehicle Department to operate the car.

Bonich testified that he was driving along Hilliard Road at about twenty-five miles per hour and that although his headlights were in good condition and lighted he did not see the standing vehicle until he was "about twenty-five feet" from it. He said: "I tried to apply the brakes at the moment it came to me that I saw that car." But he was uncertain whether the brakes were actually applied before the impact.

The defendant further testified that the reason he did not see the standing car earlier was that his vision was partly impaired by the headlights of a car proceeding in the opposite direction, although, he said, these lights "didn't bother me

any more than ordinary.'' He admitted that he never saw Waite at all prior to the impact.

On the other hand, Mrs. Waite testified that there was no car meeting Bonich as he approached the standing car.

Counsel for the plaintiff in error, the defendant below, admit the sufficiency of the evidence to sustain a finding that the defendant was guilty of negligence which proximately caused the collision, and we need not dwell on that phase of the case. But they earnestly contend that Waite was guilty of contributory negligence as a matter of law which bars a recovery here. It is urged that although the decedent had been warned of the approaching Bonich car he remained in its lane of travel completely or partly hidden by his standing car from the view of the driver of the approaching car, when by taking only a step or two he could have removed himself to a place of safety, as his wife had done. Such negligence, it is said, continued down to the moment of the impact and proximately contributed to Waite's death.

We do not agree with the contention that Waite was guilty of contributory negligence as a matter of law. As the court properly told the jury, it was the statutory duty of Waite to remove the disabled vehicle from the roadway ''as soon as possible.'' Code, § 46-256. At the time of the collision he was endeavoring to perform that duty. He was examining or testing the car to see whether in its disabled condition it could be moved.

Of course, in performing this duty it was incumbent on him to exercise ordinary care to avoid being injured by a passing car. While he knew that his car was partly blocking the lane of westbound cars, and although he had been warned by his wife that such a car was actually approaching, he had the right to assume that the driver would be keeping a reasonable lookout. From her place of safety his wife had told him that the approaching car was, as she thought, going to stop.

It was for the jury to say whether he acted as an ordinarily prudent person would have acted under the same or similar circumstances—that is, whether he had the right to rely on his wife's judgment that the approaching car would stop, or should have observed that it was not going to do so, or should have removed himself to a place of safety until the car had passed.

Nor are we impressed with the contention that the court should have submitted to the jury whether Mrs. Waite, who

would be the sole beneficiary of such damages as might be awarded for the wrongful death of her husband, was herself guilty of contributory negligence which would bar any recovery in her favor.

The argument is that it was for the jury to say whether Mrs. Waite was negligent in that, after observing the approaching car and telling her husband that it was going to stop, she momentarily diverted her attention from it, for the safety of the dog, and failed to observe and warn her husband that the car was actually not going to stop.

In support of their contention counsel cite *Danville* v. *Howard*, 156 Va. 32, 157 S. E. 733. In that case we held that the negligence of a father in failing to exercise the proper parental care to remove his child from a dangerous situation barred his recovery of damages for the child's wrongful death.

Here we have no such situation. Waite was a man in full possession of his faculties and was attempting, as he stated to his wife, to "manage" the situation. She warned her husband of the oncoming car and he was fully aware of its approach. Her husband was not under her care and there was no duty on her to be continually on the lookout for his safety. The only duty or obligation which she owed him was that of warning him of what she considered to be an impending danger, and this she did.

There is nothing in the evidence to indicate that if she had kept her attention fixed on the approaching car she could have observed in time to avoid the tragedy that it was not going to stop.

The court submitted to the jury the question as to whether the defendant had the last clear chance to avoid the collision. The defendant objected on the ground that there was no evidence upon which to base such an instruction, and that, in any event, it was not in proper form and incorrectly stated the doctrine of last clear chance. We agree that the doctrine of last clear chance was inapplicable to the evidence before the jury and that it was error to have submitted the case on that issue.

We have many times said that the plaintiff is not entitled to recover under the last clear chance doctrine on mere peradventure, and that the burden is on him to show by a preponderance of the evidence that the defendant was negligent in what he did or failed to do after he discovered, or should have dis-

covered, that the plaintiff was in a situation of helpless or unconscious peril. *Burton* v. *Oldfield,* 194 Va. 43, 47, 72 S. E. (2d) 357, 360; *Hardiman* v. *Dyson,* 194 Va. 116, 121, 72 S. E. (2d) 361, 365.

As we said in the *Burton Case,* "The last clear chance doctrine presupposes time for effective action and is not applicable when the time is too short to avoid the accident by exercising reasonable care." 194 Va., at page 47, 72 S. E. (2d) at page 360.

In the case before us there is no evidence that the defendant saw, or should have seen, that Waite was in a situation of helpless or unconscious peril. The defendant testified that he never saw Waite prior to the impact. But if it be assumed that as the defendant approached the disabled car he could or should have seen Waite standing on the far side of it, yet there is no showing that the deceased was "in a situation of helpless or unconscious peril" from which he could not have extricated himself by the exercise of ordinary care. The positive evidence is that Waite had been warned of the approaching car and knew of his peril if he remained where he was standing and the oncoming car failed to stop. Neither was he in a helpless situation, for by taking a few steps he could easily have removed himself to a place of safety.

Moreover, "the doctrine of last clear chance does not supersede the defense of contributory negligence. If opportunity to avoid the accident was as available to the decedent as to the defendant, then decedent's negligence was not a remote cause of the collision but continued as a proximate cause." *Burton* v. *Oldfield, supra* (194 Va., at page 47, 72 S. E. (2d) at page 360).

If the jury had found that under the evidence Waite was negligent in remaining in the road as the Bonich car approached, that negligence never became a remote cause of his death but was an active and efficient cause continuing down to the time of the impact.

The circumstances of the case before us are quite similar to those in the *Burton Case,* and the legal principles there enunciated are controlling here. There the plaintiff's decedent and several companions were pushing a disabled car at night along a straight road, when an overtaking car driven by the defendant ran into the rear of the disabled car, killing the plaintiff's decedent. There, as here, an instruction was given at the request of the plaintiff submitting to the jury the plaintiff's right to

recover under the last clear chance doctrine. We held that to be reversible error because, as we said, if the plaintiff's decedent was negligent in placing himself in a position of peril and remaining there, such "negligence never became a remote cause of the collision, but necessarily existed and was active and efficiently contributing to the collision when it occurred." (194 Va., at page 48, 72 S. E. (2d) at page 361.) That case, we said, should have been submitted to the jury to determine whether the defendant was guilty of negligence which was a proximate cause of the accident, and if so, whether the plaintiff's decedent was guilty of contributory negligence. (194 Va., at page 47, 72 S. E. (2d) at page 360.) The same is true in the case now before us.

Having reached the conclusion that there was no evidence to support a last clear chance instruction, it is unnecessary that we consider whether the particular instruction was in proper form.

At the oral argument before us counsel for the plaintiff took the position that, in any event, the granting of the last clear chance instruction was harmless error, because, they said, under the evidence Waite was free of contributory negligence as a matter of law and a verdict for the plaintiff was the only proper one which could have been found. But, as we have already said, in disposing of one of the defendant's main contentions, it was for the jury to say whether Waite was guilty of contributory negligence.

It is argued that the jury had the right to infer from the related circumstances that at the time of the impact Waite was about to get into the car for the purpose of removing it from the road, in obedience to the mandate of the statute. Whether the evidence supports such an inference we need not stop to inquire, for it would still be a jury question as to whether an ordinarily prudent person would have attempted to get into the standing car under the same or similar circumstances.

The judgment complained of is reversed, the verdict set aside, and the case remanded for a new trial to be had in accordance with the views here expressed.

*Reversed and remanded.*