## Richmond

GEORGE MICHAEL DICKERSON, AN INFANT, WHO SUES BY HIS MOTHER AND NEXT FRIEND, MAXINE NORMAN DICKERSON v. JAMES L. BALL.

WILLIAM K. DICKERSON v. JAMES L. BALL.

May 4, 1959.

Record Nos. 4934, 4935.

Present, Eggleston, C. J., and Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*J. Randolph Davis* and *Robert F. Boyd*, for the plaintiffs in error.

*Preston P. Taylor* (*Taylor, Gustin & Harris*, on brief,) for the defendant in error.

Eggleston, C. J., delivered the opinion of the court.

On June 19, 1957, about 6:00 p. m., George Michael Dickerson, aged three, while running into the street from the south side of Thirty-eighth Street, in the City of Norfolk, was struck and badly injured by a station wagon driven eastwardly by Lieutenant Commander James L. Ball, U. S. N. The child, suing by his mother and next friend, filed a motion for judgment against Ball to recover damages for his injuries. The father, William K. Dickerson, filed a motion for judgment against Ball to recover for medical expenses incurred and the loss of the child's services. By agreement, the two cases were heard together by a jury which brought in a verdict in behalf of each plaintiff. In each case the trial court set aside the verdict and entered a final judgment for the defendant, presumably on the ground that there was no showing that the defendant was guilty of negligence which was a proximate cause of the accident. In each case the plaintiff has appealed, claiming that the evidence was sufficient to sustain the verdict.

At the scene of the accident Thirty-eighth Street runs east and west, is 28 feet wide from curb to curb, and smooth-paved. The child lived with his grandparents, Mr. and Mrs. Max J. Norman, at their residence, number 615 West Thirty-eighth Street, which is on the south side of the street. At the time the Norman car was parked adjacent to the curb in front of the Norman residence. An Oldsmobile, owned by Fred Hugo, was parked about 8 to 10 feet in the rear of the Norman car. Hugo, who was sitting in the driver's seat of his car, witnessed the accident.

Hugo, called as a witness for the plaintiffs, testified that after he

had been there for about five minutes he observed the Dickerson boy standing on the curb, about three or four feet in front of the Hugo car. From his position in his car he could see "about half of the child," but no more because, as he said, the child was "too close" to the front of the car. Hugo said that after the child had been standing there for "approximately a minute," "all of a sudden he just decided to run out into the street" from between the two parked cars and was struck by the front of the passing Ball car, between "the headlight and center of the fender." At the moment of the impact, Hugo said, the child was "approximately three or four feet" out in the street beyond the left side of the Hugo car.

Hugo first saw the Ball car when it was "coming up beside" him, and the child "started a little earlier than that." He said the Ball car "appeared" to swerve to the left as the child emerged from the front of the Hugo car. After the impact he observed that the Ball car had made skid marks on the pavement, beginning "maybe two or three feet past" the left front of the Hugo car.

Investigating officers who came to the scene shortly after the accident measured the marks as extending 20 feet up to what they were told was the point of impact, and 40 feet beyond, or a total of 60 feet.

Mrs. Dorothy Griffin, another witness for the plaintiffs, testified that she was seated by a front window across the street from the Norman residence and saw the impact. When she first observed the Ball car "its front was just about up even with the rear of the Hugo car," and the child was then "up in front of" the latter car. She did not see the child run into the street.

This witness further testified that she had been driving for eight or ten years, knew the speed limit along that street to be 25 miles per hour, and that, in her opinion, the driver of the Ball car "was speeding." However, she did not attempt to fix the speed of this car.

Hugo further testified that while he sat in his car, prior to the accident, he saw two or three children "playing up on the lawn," between the sidewalk and the front of the house just east of the Norman residence. He indicated on a plat the location of these children as being about 40 feet from the southern curb of the street and about 50 feet from the point on the curb at which the Dickerson child was standing before he ran into the street. These children, other than the Dickerson child, he said, were plainly visible to him as he sat in his car.

Just before the accident two DeHart children were playing around a car parked on the west side of their house which sits back about 40 feet north of the northern curb of Thirty-eighth Street.

Ball testified that just before the accident he was driving his car, a 1955 Mercury station wagon, eastwardly along the right-hand side of Thirty-eighth Street at the approximate speed of 25 miles per hour. He was accompanied by Commander Whitcombe, who was on the front seat next to him, by Whitcombe's eight-year-old son, and his (Ball's) six-year-old son. Because of a death in his family Commander Whitcombe was unable to appear at the trial.

Ball further testified that when his car was "approximately even with" or had "passed the rear" of the Hugo car, he saw the head of the Dickerson boy "out in front" and "even with" the left front fender of that car. The boy, he said, "appeared to be moving rapidly." Upon seeing the child he "immediately hit the brakes" and tried to turn his car to the left, but was unable to avoid the impact. Just as he applied his brakes Commander Whitcombe exclaimed, "Look out!"

As he neared the Hugo car, which Ball said was "higher" than, and obstructed the view of, the child, he did not see the child until after he had left the curb and gotten out in front of the Hugo car. On direct examination, Ball testified that the child was "from 12 to 16 feet" from his front bumper when he first saw him. On cross-examination he estimated the distance at "approximately 25 or 30 feet." When questioned by the court on the discrepancy in these estimates, he said, "Well, I used the Oldsmobile as a measurement. The Oldsmobile is 16 feet long, and the child was—it appeared to be right at the end of it."

It was agreed that the height of the radiator of the Hugo car is three feet and seven inches, and that the child is three feet and three inches tall.

Ball further testified that as he approached the scene he did not observe any of the other children who, as has been said, were playing near the street.

The plaintiffs contend that from these related facts the jury had the right to find that the defendant was guilty of negligence in several respects, any one of which was a proximate cause of the accident. First, they say, the jury had the right to find that as the defendant approached the place where the accident occurred, by the exercise of ordinary care he should have seen the child on the curb

and should have anticipated that he might run into the street in the path of his car. *Boyd* v. *Brown*, 192 Va. 702, 709, 66 S. E. 2d 559, 563.

The burden of proof was on the plaintiffs to show this, and this they have failed to do. As Ball said, the Hugo car obstructed his view of the child and prevented his seeing him. There is no evidence to the contrary and the physical facts support this testimony. The radiator of the Hugo car was higher than the child's head, and the body of that car further obstructed Ball's view as he approached the child. Hugo, a witness for the plaintiffs, testified that the child "suddenly" ran out into the street from between the two parked cars and into the path of the Ball car. The testimony of Ball is to the same effect. There is no evidence that by the exercise of ordinary care the defendant should have seen this child and anticipated that he would run into the street ahead of his car. See *Boyd* v. *Brown*, *supra*, 192 Va., at pages 711, 712, 66 S. E. 2d, at page 565.

█ Next, it is said, the defendant was negligent in not observing the several children playing near the street and that their presence should have required him to anticipate that other children might be near and that one of them might thoughtlessly run into the street. As has been said, just before the accident there was one group of children playing on the lawn east of the Norman residence on the south side of the street, some 40 feet from the curb. Two other children were playing near the DeHart house on the north side of the street and about 40 feet from the northern curb. Had Ball seen these children, their presence would not have put him on notice that another child might be standing on the curb, preparing to run into the street, 50 feet away from the nearest group of children and across the street from the other two. There is no evidence that before the accident the Dickerson child had been with any of these children, or where he had come from before reaching the curb.

█ The plaintiffs contend that the jury had the right to find from the testimony of Mrs. Griffin that the defendant was driving at an excessive speed. While this witness did testify that the Ball car was "speeding," she did not attempt to fix the speed. Moreover, this estimate was based on a momentary observation, for she said that when she first saw the Ball car its front was just at the rear of the Hugo car.

Aside from the fact that such opinion is of doubtful probative value to show excessive speed, there is no showing that her described speed

of the car was a proximate cause of the accident. There is no showing that the accident would not have occurred had the car been driven at the permitted speed of 25 miles per hour. According to the tables of speed and stopping distances recognized in Code, § 46.1-195, a car driven at 25 miles per hour covers 36.62 feet per second, and allowing for the average reaction time, will travel 59 feet before it can be stopped. Obviously, then, had this car been driven at the permitted speed, it could not have been stopped before striking the child after he had run into the street beyond the Hugo car.

■ The final contention of the plaintiffs is that the jury had the right to find that after the child had passed the front of the Hugo car and come into the street, by the exercise of ordinary care the defendant should have turned his car sharply to the left and avoided striking him. This contention is also without merit. It appears from the testimony of Hugo, the plaintiffs' witness, as well as that of Ball, the defendant, that the child suddenly ran into the street from between the parked cars and when he did so, the Ball car was about the length of the Hugo car, that is, 16 feet, away. There is no showing that Ball then had time to avoid striking him. Ball testified that he swerved his car to the left in the effort to avoid the impact, and in this he is corroborated by the testimony of Hugo. There is no showing that by the exercise of ordinary care Ball could have avoided the accident.

For these reasons the judgment in each case is

*Affirmed.*