## Richmond

MALCOLM A. NEWTON v. ARTHUR CARPENTER.

FRANK WAYNE NEWTON, AN INFANT WHO SUES BY MALCOLM A. NEWTON, HIS FATHER AND NEXT FRIEND v. ARTHUR CARPENTER.

November 28, 1960.

Record Nos. 5138, 5139.

Present, All the Justices.

The opinion states the case.

*William H. King (Robert H. Patterson; McGuire, Eggleston,*

*Bocock and Woods,* on brief), for plaintiffs in error, Malcolm A. Newton and Frank Wayne Newton.

*Ernest G. Garrett, Jr. (John G. May, Jr.; Joseph J. Williams, Jr.; May, Garrett, Miller and Newman,* on brief), for defendant in error, Arthur Carpenter.

MILLER, J., delivered the opinion of the court.

These companion cases were heard together in the trial court. They arose as a result of personal injuries sustained by Frank Wayne Newton, an infant, who was struck by a motor vehicle, allegedly owned and driven by defendant, Arthur Carpenter. In one case Malcolm A. Newton sued to recover expenses incurred by him in providing medical care and treatment for his son; in the other the infant, Frank Wayne Newton, sued by his father and next friend to recover all other damages.

When the plaintiffs rested, a motion by Carpenter to strike the evidence in each case was sustained and summary judgments entered for defendant. We granted appeals.

Assignments of error taken by each plaintiff are that the court erred in striking the evidence and in excluding evidence offered by plaintiffs. Each insists that the evidence is sufficient to show that Carpenter was operating the vehicle that struck Frank Wayne and that the mishap was proximately caused by defendant's negligence in failing to keep a proper lookout.

The pertinent evidence follows:

The accident occurred about 2:50 p.m. May 9, 1957, on Penick road in Henrico county, Virginia, where the speed limit is 55 miles an hour. At the time the weather was clear and the roadway dry. Penick road runs east and west, and has an 18 to 20-foot wide hard surface. On its south side in the area of the accident its dirt shoulder is 4 to 6 feet wide.

Frank Wayne, then seven years old, lived with his parents on the north side of Penick road. Moments before the accident, the child, who had his junior size bicycle with him, was seen playing with his younger brother, Craig, and other small children about 60 feet from Penick road in the yard of the Cox residence, which is situated on the southern side of the road and somewhat east of the Newton

residence. Leading from the Cox residence to Penick road are two driveways. One extends in a northwesterly direction from the residence to the road and the other extends in a northeasterly direction from the residence to the road, forming an approximate triangle with the residence at the apex. The Cox property is divided by a fence from the Hart lot and residence, which are situated to the west. The driveway from the Hart property to Penick road is comparatively straight and not far from the fence. The western Cox driveway and the Hart driveway are almost adjacent as they enter upon the shoulder of Penick road.

On the northern edge of the Hart lawn, near the shoulder of the road, are three pieces of shrubbery, and on the right side of the lawn near Penick road are two trees, one hemlock being near the northeast corner of the lawn where the driveway comes to the shoulder.

A plat identified as Exhibit 1, introduced in evidence by stipulation, shows Penick road and adjacent area, the Cox and Hart lots, the dividing fence, the three driveways, and the location of the trees and shrubbery on the two lawns between the residences and Penick road.

Immediately after being struck, Frank Wayne was found on the shoulder of Penick road in a pool of blood at the entrance of the western driveway to the Cox residence; most of his body was on the shoulder; one leg was tangled in the bicycle and part of his leg and foot were on the hard surface. He sustained severe and permanent head injuries and did not testify because he did not remember what happened. There were no actual eye-witnesses to the accident unless it be Frank Wayne's five year old brother, Craig, but two older boys, Wally Walton and Stanley Eugene Brock, heard the noise of the collision. Officer Montgomery, who investigated the accident, testified that Craig told him that "he was running behind" Frank Wayne who was riding his bicycle and that they were headed home when a gray automobile hit the bicycle. This testimony was admitted without objection. However, when Craig told the officer that a gray car hit the bicycle, Montgomery attached little importance to that statement because of the child's age.

Montgomery further testified that when he was upon the scene investigating the accident, defendant did not volunteer any information or make himself known. The officer was unable to question Frank Wayne because he was being placed in an ambulance and was

unable to talk. Several spectators offered information as to the type of vehicle that struck the child. A twelve year old boy, looking out the window of Dumbarton school, did not see the impact, but told Montgomery that shortly afterwards a green Chevrolet pickup truck left the scene. That night defendant informed the police department that two dump trucks had passed him on Penick road. From this and other information Montgomery began looking for a green dump truck with red paint on it since some red paint was found on the bicycle where it was hit. Some days later while talking to Carpenter who lived two blocks from the scene and traveled Penick road several times a day, Montgomery observed defendant's two-tone car, gray at the top with a shade of red at the bottom. He noted some damage on the right front fender of the automobile, and the paint matched that left on Frank Wayne's bicycle. The next day he went back to talk with defendant, and at that time received a statement from him which indicated that his car might have been in contact with the bicycle, though Carpenter never admitted that it was.

Wally Walton and Stanley Eugene Brock testified that they were in a field on the north side of Penick road, which is approximately 330 feet east of where the child was found. When they heard the impact, they turned and saw defendant's car swerve to the left side of the road, almost hitting a pole, then go over to the right side and come to a stop. No skid marks were left by the car; before it stopped, the two boys ran that way and arrived beside Frank Wayne about the same time as did defendant. Wally Walton asked Carpenter if he hit the boy, and defendant replied, "No, a dump truck hit him." Shortly after officer Montgomery arrived, defendant left the scene.

The defendant, called by plaintiffs as an adverse witness, testified that he was driving eastwardly along Penick road about 2:50 p.m. at approximately 30 to 35 miles an hour and that the right wheels of his 1957 Chevrolet automobile were 15 to 18 inches from the southern edge of the hard surface. He is 5 feet, 11 inches tall, and he was sitting upright behind the steering wheel and had clear vision ahead. The left front window of the car was open; the other three windows were closed and the radio was playing. Carpenter never admitted hitting the boy, but when asked the following questions, he answered as indicated.

"Q. You still take the position you were not involved in the accident?

"A. Yes, sir.

"Q. You feel you were not involved in the accident?

"A. I feel like I don't see how I could have been, unless even the boy had been riding awful fast because a man with one eye could have seen him if he had been standing there or riding slow. I would have certainly seen him coming out from where she said he was coming out.

*        *        *        *        *        *        *

"Q. Do you admit that your car swerved suddenly to the left at the time that the accident is supposed to have taken place?

"A. Well not right at that time, sir. When I was going right by I sort of seen something on the right just at that big tree kind of overhangs the road and I turned and looked back for the second time, throwed my elbow on the seat and seen him out the window. I did swerve to the left and turned on back to the right and stopped and got out of the car and run back just as fast as I could, * * *."

In a written statement made to Montgomery on May 12, 1957, which Carpenter identified when testifying, he gave this account of what he saw:

"A. When I first went by, just like you go past something and like you go past a driveway with trees and things in it and something catches you in the eye, like you wave your hand. I saw something then, and I turned around and looked back out of the back seat and put my arm up on there and I seen this child and the bicycle laying back there. I thought it was my boy to start with."

Alma Newton, the child's mother, testified that she had seen the children playing in the Cox yard a few moments before the accident; she was at the western edge of her front porch watering shrubbery when the mishap occurred. She did not see the collision or the vehicle which hit the bicycle, but she "heard a crash" and looked up and saw the bicycle and child, and ran to the scene.

Julian Mason Weaver, a chemist, testified he made an analysis of the scrapings of red paint from the bicycle and defendant's car and determined they were practically identical, and that the paint found on the bicycle had come from defendant's car.

█ Evidence which plaintiffs insist was erroneously excluded consists of a plat made about two years after the accident by George Hunt, a certified professional engineer. It is a plat on an enlarged scale of part of the area disclosed on Exhibit 1 and was offered,

along with Hunt's testimony, to show the range of vision that the driver of an automobile on Penick road proceeding eastwardly as Carpenter testified that he was, would have of the area and especially his range of vision into the western driveway leading from the Cox residence where it was contended Frank Wayne rode as he approached and entered upon the shoulder of Penick road. Hunt had made measurements of the range of vision that a driver on Penick road would have into the driveway from various points, varying from 200 feet to 30 feet west of the place where the bicycle and Frank Wayne were found on the pavement's edge. The limit of vision into the driveway from the various points on Penick road is evidenced on the plat by straight lines drawn from the points in Penick road to the center line of the driveway. These lines disclose that as one approaches from the west along Penick road at the same elevation and on the right side of the road as Carpenter said he did, the observer's range of vision into the driveway increases materially as he nears its entrance.

In *Norfolk & Western Rwy Co.* v. *Henderson*, 132 Va. 297, 111 S. E. 277, experimental evidence of a nature comparable to this plat, and Hunt's explanation of what it disclosed, was admitted over defendant's objection that the conditions under which the experiments were made were not substantially similar to those confronting the engineer at the time of the accident. In approving its admission, we said:

"The rule, to be sure, is well settled that tests and experiments must be made under substantially the same conditions as those prevailing at the time and place of the occurrence under investigation, * * *." (At page 311)

In objecting to the introduction of this exhibit and Hunt's explanation and testimony as to the range of vision, defendant insisted that it had not been shown that Frank Wayne approached Penick road along this driveway and because certain limbs had been cut from a tree on the Hart property near Penick road, which he claimed materially changed the physical conditions and enlarged the range of vision from that existing at the time of the accident.

. He relied upon *Portsmouth Transit Co.* v. *Brickhouse*, 200 Va. 844, 848, 108 S. E. 2d 385, where it was held to be error to permit in evidence an experiment to show the asserted line of vision of a bus driver who struck an infant, and the map made by the engineer to illustrate the results. It was there said:

"* * * The height of the person driving the bus involved in the accident was unknown, as was his sitting posture in the bus as it was in motion through the traffic. * * * These uncertain elements could have made the actual view of the driver very different from the hypothetical view produced by the experiment. The experiment was based on elements and conditions some of which were and others of which could have been quite different from those existing at the time of the accident, and was therefore inadmissible in evidence."

In holding, as we do, that the plat was properly disallowed in evidence, we need not determine whether the conditions existing when the plat was made were so different from those that existed when the accident happened as to render it inadmissible. Here it is inadmissible because the evidence is insufficient to show that Frank Wayne rode his bicycle northwardly on and approached Penick road along the western driveway from the Cox house. Though he, the bicycle and blood were found on the shoulder of Penick road at the entrance of that driveway, yet it does not appear that his younger brother, Craig, told the officer along which driveway he followed Frank Wayne as they proceeded homeward, nor is there any other evidence to indicate where he came from before being struck. The plat was offered to show the range of vision into the western driveway, but plaintiffs not having proved that Frank Wayne came out of that driveway upon Penick road, it necessarily follows that the plat was properly excluded.

Plaintiffs offered the testimony of four witnesses to show that children frequently played in the area along or near Penick road, extending back southward therefrom about 75 feet and eastwardly about 360 feet from the yard of the Cox residence. In tendering this testimony, plaintiffs also offered to prove that defendant was aware of the fact that children frequently played in this area, but upon objection, the evidence was excluded. Thereafter, while defendant was being questioned, he stated that when he looked back and saw Frank Wayne lying on the side of the road, he thought the child might be his boy.

In response to the following questions, he answered as indicated.

"Q. Why did you think it was your boy?

"A. Because my boy played up there right much.

"Q. He played in that same area?

"A. Yes, sir, right on this side of the house, they have a ground up there they play all the time."

Plaintiffs contend that the evidence to show that children frequently played in the area of the driveways south of Penick road should have been admitted because by his own admission defendant was aware of that fact. *Chapman* v. *Dillard*, 162 Va. 389, 174 S. E. 657; *Richardson* v. *Lovvorn*, 199 Va. 688, 101 S. E. 2d 511, and other decisions are cited in support of this contention. However, we need not determine whether or not the evidence to show that children frequently played in this area was admissible. If this testimony were admitted, it would not alter the result because even though defendant knew that children frequented the area, yet how this mishap occurred would still be left in the realm of conjecture.

Its admission would not have any probative value to show that defendant did not keep a proper lookout, for here the place where Frank Wayne was actually struck, the manner that he entered upon the road, or the place from whence he came immediately before the mishap are not shown. These vital facts, needed to show that defendant failed to keep a proper lookout, are not proved but left to speculation and surmise. Mere proof of the accident raises no presumption of negligence. That must be proved by a preponderance of the evidence.

"It must be remembered that the burden was on the plaintiff to prove not only that the defendant was negligent; but that his negligence was the proximate cause of the accident. * * *" *Boyd* v. *Brown*, 192 Va. 702, 711, 66 S. E. 2d 559.

Craig's statement to Montgomery is sufficient to show that Frank Wayne was headed home when the mishap occurred. Yet it fails to show whether he came down the western driveway from the Cox residence, along the fence between the Hart and Cox property, out of the Hart driveway beside the hemlock tree that borders the shoulder of Penick road, or from elsewhere. Lacking proof of these circumstances, it cannot be said that defendant, who was driving well within the speed limit, was guilty of negligence in not having seen the child in time to avoid the collision.

"* * * There is no evidence that by the exercise of ordinary care the defendant should have seen this child and anticipated that he would run into the street ahead of his car. * * *" *Dickerson* v. *Ball*, 200 Va. 809, 813, 108 S. E. 2d 256.

The judgments of the trial court are affirmed.

*Affirmed.*