## Richmond

### WALTER E. SMITH, AN INFANT, ETC. v. VIRGINIA TRANSIT COMPANY, INCORPORATED, ET AL.

### MAYNARD A. SMITH v. VIRGINIA TRANSIT COMPANY, INCORPORATED, ET AL.

March 7, 1966.

Record Nos. 5993, 5994.

Present, All the Justices.

*Israel Steingold* and *Steingold, Steingold & Chovitz*, on brief, for the plaintiffs in error.

No argument for the plaintiffs in error.

*Lawson Worrell, Jr. (Ralph H. Ferrell, Jr.; Hunton, Williams, Gay, Powell & Gibson; Williams, Cocke, Worrell & Kelly*, on brief), for defendant in error, Virginia Transit Company, Inc.

*E. Pryor Wormington (Rixey & Rixey*, on brief), for defendant in error, Constance J. Edwards.

SPRATLEY, J., delivered the opinion of the court.

On January 2, 1963, about 3:30 p.m., Walter E. Smith, an infant, after being discharged from a bus of the Virginia Transit Company, Incorporated, [V. T. C.] on the south side of Little Creek Road in the City of Norfolk, ran ahead of the bus into Little Creek Road, and was injured when he came into collision with a Pontiac automobile driven by Mrs. Constance J. Edwards. The child, suing by his father, as next friend, filed a motion for judgment against V. T. C., Mrs. Edwards, and Bratten Pontiac Corporation to recover

damages for his injuries. His father, Maynard A. Smith, filed a motion against the same defendants to recover medical expenses incurred and the loss of the child's services.

By agreement the two cases came on to be heard together before a jury. At the conclusion of the plaintiffs' opening statement, Bratten Pontiac Corporation was dismissed as a party defendant in each case. At the conclusion of the plaintiffs' evidence, V. T. C. and Mrs. Edwards moved to strike the evidence as to them. The court overruled the motion. Thereupon, V. T. C. rested its case without offering any evidence; but Mrs. Edwards presented evidence in her behalf. At the conclusion of all the evidence, both remaining defendants joined in a motion to strike the plaintiffs' evidence; the trial court sustained the motion, dismissed the jury, and entered summary judgment for the defendants.

The plaintiffs have appealed in the cases against V. T. C. and Mrs. Edwards, claiming that the evidence was "sufficient to establish a *prima facie* case of negligence" on the part of each of those defendants.

The defendants filed motions in this Court to reject the brief of plaintiffs, and to disallow any oral argument, because their brief was not filed in accordance with Rules of Court 5:12 § 4(a) and 5:12 § 7. They also moved to dismiss these writs upon the ground that plaintiffs in error had not complied with Rules 5:1 § 6(f) and 5:12 § 1(c). The printed record was filed February 12, 1965, and plaintiffs' brief was filed on June 28, 1965, 101 days after the time for filing the brief had expired. Rule 5:12 § 4(a). The only excuse offered by counsel for plaintiffs is that: "Through inadvertence in copying a previous petition for a writ of error, it was erroneously stated that the petition was not adopted as the opening brief." No request was made for an extension of time, and none granted. Rule 5:12 § 4(c).

The writs here were granted when plaintiffs' petition and the original record were presented to us, and the cases were then placed on the docket. There is no jurisdictional requirement that a litigant file a brief. The right to do so is for his benefit, and if he fails to file it according to the rules, he must pay the penalty for non-compliance, that is, he "will not be heard orally" to argue the case before this Court. Rule 5:12 § 7. Accordingly, when the case was called, we refused to allow plaintiffs to argue orally.

An inspection of the original record shows that plaintiffs failed to designate for printing "everything germane to the errors

assigned." Rule 5:1 §6(f), and also failed to comply with Rule 5:12 § 1(c), by omitting evidence favorable to defendants. Counsel for defendants have directed our attention to the omission; and we, therefore, have before us all of the material evidence. While the violations might justify us in refusing to consider the assignments of error involving the sufficiency of the evidence, we will not visit such drastic action upon the plaintiffs. Upon a consideration of all the material evidence, including that in the original record, as well as in the printed record, we are able to decide the issues involved. *Bonich* v. *Waite*, 194 Va. 374, 375, 73 S. E. 2d 389 and *Jenkins* v. *Womack*, 201 Va. 68, 69, 109 S. E. 2d 97 and cases therein cited.

We have repeatedly set out in many cases the reason and necessity for obeying the Rules of Court. Only by a consideration of all the material facts and circumstances can we correctly decide the questions presented. The Rules have been in effect for 15 years, and every competent attorney at law knows, or should know, their requirements. *Gardner* v. *Commonwealth*, 195 Va. 945, 946, 947, 81 S. E. 2d 614; *Whitlow* v. *Grubb*, 198 Va. 274, 276, 93 S. E. 2d 134; and *Carter* v. *Nelms*, 204 Va. 338, 340, 341, 131 S. E. 2d 401.

The material evidence may be summarized as follows:

The accident occurred on January 2, 1963, about 3.30 p. m., on Little Creek Road, which has its eastern terminus at Shore Drive Road. Little Creek Road is a hard surfaced street, divided into four lanes, two for eastbound and two for westbound travel. A wide grass median strip runs down its middle, separating eastbound traffic from westbound. The roadway was dry and the weather clear. The speed limit at the point of the accident is 45 miles per hour. Thompson Road, which runs generally north and south, intersects Little Creek Road on the north side, forming a "T" intersection.

Virginia Transit Company is a common carrier of passengers, and as a part of its service operates its ordinary passenger buses from and to various school areas within the city of Norfolk, pursuant to an agreement with the School Board. School children can, by paying a fare, obtain transportation along a regular route to any regular bus stop at which they may desire to alight. The buses bear no signs or signals indicating that they are carrying school children.

On the afternoon of the day in question, a bus driven by T. W. Eatmon picked up about 50 children, including Walter E. Smith, nearly 13 years of age, a student at Azalea Gardens Junior High School. The usual route of the bus, after picking up the children,

was to proceed east on Little Creek Road, along the south side of that road, towards its terminus with Shore Drive Road. When it reaches the latter road, it makes a left turn, reversing its direction, and then proceeds west on the north side of Little Creek Road, on its return trip. On the south side of Little Creek Road at its intersection with Thompson Road, the school bus makes a regular scheduled stop as it travels easterly, although no bus signs are maintained there. Walter E. Smith was familiar with the bus route, and knew that he could get off the bus either on the south or north side of Little Creek Road at its intersection with Thompson Road.

On the occasion involved, the bus stopped on the south side of the road, at the intersection, to permit such of its passengers as desired to do so to alight. Its right front wheels were on the south edge of the hard surface. Beyond the shoulder, there is a pathway over an open lot leading to some residences on that side of the street. Smith, Danny Jones, Charles Ogman and several other pupils alighted safely on the shoulder, off the traveled portion of the street. Smith and Jones immediately ran in front of the stopped bus, northerly across the street, and into the side of an eastbound automobile driven by Mrs. Edwards.

Mrs. Edwards testified that she was familiar with the type of car she was driving; that she had lived in the area near the place of accident for some years; and that she had seen no bus on Little Creek Road discharging school children before the accident. On the day involved, she could not see anyone getting off the front of the bus as her view was blocked by the body of the bus and she saw no children near the bus. When the bus stopped, she was just a short distance behind it, turning into the inside lane for the purpose of making an anticipated left turn, and driving within the speed limit. She slowed down in preparation for the turn, and as a precaution in passing the bus. As she got abreast of the bus, she saw two boys run from its front, and she applied her brakes immediately. The two boys continued on their course and ran into the right side of her car. Her brakes acted quickly and she stopped within a distance of 10 to 30 feet.

A disinterested eye-witness, Joseph J. Wagner, said he saw Mrs. Edwards' car when it was about even with the rear of the bus; that at that time several boys got off at its right front; and two of them ran immediately in front of the bus directly across Little Creek Road in a northerly direction. He said that one of them ran into the right

front fender of Mrs. Edward's car, and the other boy struck the car near where its antenna is located, about a foot from its windshield.

Charles Ogman testified that as he and some of the passengers, including Smith and Jones, walked in the aisle of the bus towards its front door, "Walter Smith, this youngster here, said to Danny Jones something to the effect that he would race him to see who could get across Little Creek Road first."

Danny Jones, who first testified that he remembered nothing of the accident, admitted, on cross-examination, he has stated in a discovery deposition that he and Walter Smith ran across the street in pursuance of an agreed plan to see, "who could get to the drugstore first," and that his discovery statement was, in fact, "the truth."

Walter E. Smith remembered nothing from the time he got on the bus until he found himself in a hospital.

The bus driver did not know of the plan of the boys to race across the street.

The plaintiffs introduced in evidence Section 28-23 of the Norfolk City Code of 1958, which provides:

"All vehicles operated under this chapter shall stop for the purpose of taking on or letting off passengers at such points or places as may be designated by the city manager, or his duly authorized representatives. All such stops shall be clearly marked by suitable signs to be placed and maintained at the cost and expense of the person operating hereunder."

William D. Carr, Jr., Assistant Traffic Engineer of the City of Norfolk, testified that while no bus stop sign was maintained on the southern side of Little Creek Road at its intersection with Thompson Road, it was a regular stop for school buses operating under an arrangement between V. T. C. and the School Board. Said he: "(T)hey [the buses] are to stop wherever the children are to be picked up along the routes that's set up according to the zones they pick up the children from, and there are no designated school bus stops."

## I

Plaintiffs contend that since no bus stop sign had been erected and maintained at the intersection involved, and there was no proof that such a stop had been designated by the city manager of Norfolk, V. T. C. violated the above city ordinance; and was, therefore, guilty of negligence constituting a proximate cause of Smith's injuries, and

that the bus driver was guilty of negligence also in permitting Smith to alight at the place in question.

The city ordinance was not enacted for the specific benefit of Walter E. Smith or his fellow pupils. That portion of it which required V. T. C. to erect and maintain bus stop signs was for the purpose of informing the public where they might expect to board, or alight from buses. In order for the violation of a statute or ordinance to constitute actionable negligence, the injured person must have been of that class for whose benefit or protection the law was enacted, and the negligence complained of must be the proximate cause of the injury. *Morris* v. *Dame*, 161 Va. 545, 566, 171 S. E. 662. The fact that the bus was not stopped at a regularly designated point did not of itself make the carrier liable for injuries sustained by its alighting passenger. *Cleveland* v. *Danville Traction and Power Company*, 179 Va. 256, 260, 18 S. E. 2d 913; *Virginia Electric and Power Company* v. *Thomas*, 180 Va. 292, 294, 23 S. E. 2d 148.

■ The contention that the bus driver was guilty of negligence in permitting Smith to alight, or in failing to keep him on the bus against his wishes, until the bus had run to Shore Drive, reversed its direction, and reached the northern intersection of Thompson Road with Little Creek Road, is without merit. A passenger on a bus has the right to alight therefrom at any regular stopping point, whether he be an adult or a twelve-year old child. The duty of the carrier to its alighting passengers is fulfilled when its passengers have alighted at a place of safety. The place of stopping, and the absence of a bus stop sign had no relation to the cause of the accident.

Here, the bus was brought to a standstill, with its right wheels at the edge of the right-hand hard surfaced portion of the street and Smith alighted safely on the right shoulder, off of the traveled portion of the street. There is no evidence that the shoulder was not in a reasonably safe condition.

The violation of a city ordinance regarding a stopping place for buses does not support an action for injury unless the violation was the proximate cause thereof.

In the well considered case of *Mississippi City Lines* v. *Bullock*, [1943] 194 Miss. 630, 13 So. 2d 34, 145 A. L. R. 1199, it was held that a bus driver who stopped his bus at the edge of a road, where it was safe for passengers to alight and stand until the bus had moved away, was not chargeable with negligence in allowing a twelve-year old boy to alight while an approaching automobile was in sight, and

the boy, instead of remaining at the place of safety until the bus had moved away, ran rapidly around the rear of the bus onto the street and into the path of the oncoming automobile.

See *Corrigan* v. *Portland Traction Company*, 157 Or. 496, 73 P. 2d 378, and Annotation 145 A. L. R. 1214.

## II

As to the case against Mrs. Edwards, there is no evidence that she failed to keep her car under proper control, failed to keep a proper lookout, or was guilty of proceeding at an excessive or improper speed. She was traveling on a public highway, in her own proper traffic lane, overtaking an ordinary passenger bus with no marking on it indicating that it was a school bus. There is no evidence from which a jury could properly have concluded that Mrs. Edwards had notice that Walter E. Smith would alight from the bus, run in front of it, across the street, and against her automobile, or that she had an opportunity to avoid striking the child after seeing him running headlong into the street. *Boyd* v. *Brown*, 192 Va. 702, 712, 66 S. E. 2d 559, 565; *Dickerson* v. *Ball*, 200 Va. 809, 814, 108 S. E. 2d 256.

Plaintiffs made a motion for a new trial based on the assertion that they had discovered, after the trial, a witness who would testify that Mrs. Edwards had stated, at some former time, that the reason she slowed down in passing the bus, was that she knew children were on it.

The granting of a new trial based upon after-discovered evidence is awarded with special care and with great reluctance. It is addressed to the sound discretion of the trial court, and its judgment will not be disturbed, unless there has been an abuse of discretion. *Rountree* v. *Rountree*, 200 Va. 57, 66, 67, 104 S. E. 2d 42. Such evidence must come within specified rules, and the motion before us does not do so. The alleged new evidence, at most, is but an inconsistent statement alleged to have been made by Mrs. Edwards, and would serve only to impeach her veracity. 13 Mich. Jur., New Trials, § 22, pages 636-638.

For the reasons stated, we find no error in the rulings of the trial court, and its judgment in each of the cases is affirmed.

*Affirmed.*